WILLIAM GARRETT v. H. P. SKORSTAD AND OTHERS.

COUNTY BOARD OF CLAY COUNTY, APPELLANT.[1]

July 11, 1919.

No. 21,291.

**Drain — order of county board res adjudicata — construction of culvert for surface water.**

When a county ditch is regularly established by order of the county board and the assessment for benefits and damages is made and the ditch is constructed, the order is res adjudicata and the ditch proceeding is not subject to collateral attack; and when the ditch runs along a highway and the earth from the ditch is wasted upon the highway, as is authorized by the statute, and a turnpike is made, and thereby a swale or coulee across the highway is dammed so that the surface waters, in time of high water, do not take their natural course across the highway, a landowner is not entitled to obtain in an independent action culverts or openings through the highway or turnpike so that the flow of surface waters shall not be obstructed.

[1]Reported in 173 N. W. 406.

Action in the district court for Clay county to restrain defendants from constructing a proposed embankment across a natural watercourse known as the Chris Lowe coulee; that they be required to remove all embankments theretofore constructed in the watercourse and to open the highway to permit free passage of waters flowing in it. The facts are stated in the opinion. The case was tried before Johnson, J., judge of the First judicial district, sitting for the judges of the Seventh judicial district, who made findings and granted a permanent injunction. From an order denying its motion for amended findings or for a new trial, Clay county appealed. Reversed.

*Garfield H. Rustad,* County Attorney, and *Christian. G. Dosland,* Special Attorney for Drainage District, for appellant.

*Charles S. Marden* and *Douglas, Kennedy & Kennedy,* for respondent.

DIBELL, J.

Action to enjoin the defendants H. B. Skorstad and others, individually and as members of the town board of the town of Georgetown in Clay county, and the county board of Clay county, from obstructing a swale or coulee, which crosses the plaintiff's land, by maintaining an embankment along a county ditch which intersects the coulee at right angles. There were findings for the plaintiff awarding an injunction and the defendant county board appeals. The other defendants do not appeal and their interests are not involved.

The town of Georgetown is Congressional township 142, range 48. The plaintiff owns the west half of section 26. His land is four miles east of the Red River of the North. In 1907 and 1908 the county board constructed ditch No. 6 along the north line of his land and wasted the earth to the north on the highway along the section line. This ditch is 9 miles long. Ditch No. 7, established at the same time, is 11 miles long, and connects with No. 6. Physically they are one ditch 20 miles long extending directly east from the Red river on a section line. Two miles north is ditch No. 14, parallel with No. 6, and of substantially the same length. The Felton state ditch extends toward the northwest, starting in 15-141-46, and finds its outlet in sections 5 and 6 in 142-47. Ditch No. 7 intersects the state ditch a mile east of ditch

143—M. 17

No. 6, and ditch No. 14 intersects it two miles north and two miles west of its intersection with No. 7.

The waters from the foothills at the east come into No. 6 through No. 7 and No. 7 receives some of the foothills' waters through the state ditch. The foothills are springfed and flow in winter time. The result is that when spring comes it is not unusual that No. 6 down towards the Red is solid ice from its bed to the top of its banks. It then is of no value for surface drainage until thawed out; and when the waters come from the foothills in the spring there is flooding. And even later, in summer, when the waters come in great quantities from the foothills, and they often do, No. 6, which is not of large capacity, is unable to care for them, and flooding results, from which the plaintiff and others south of No. 6 suffer.

A coulee starts in the west half of section 35, passes northerly through the plaintiff's land, intersects ditch No. 6 on the north side of section 26 some 1800 feet east of the northwesterly corner, and continues in a generally north and northwesterly direction, intersecting ditch No. 14 in its course, and finally empties into Wild Rice, something like 12 miles northwesterly of the plaintiff's land, and finds its way into the Red. The coulee is bridged where it crosses the section line between 35 and 26, and was bridged where No. 6 intersects it, many years before the construction of the ditch, and it is bridged at every section line north in the town.

West of the coulee is a ridge such as is common in that country trending in a generally northwesterly direction, crossing the southwesterly part of 26 and trending to the northwest. This ridge obstructs the flow of surface water and where ditch No. 6 passes through it its lowest point is somewhat higher than the lowest point of the ditch at the coulee.

In constructing No. 6 the county board wasted the dirt on the north side of the ditch, upon and in improvement of a public highway. The bridge over the coulee, a part of the highway, was taken out and the coulee filled with earth from the ditch. The spoil-bank was some four feet high. By it the natural drainage afforded by the coulee was destroyed and the surface waters accumulated in times of high water. Complaint was made to the county board by the plaintiff. Finally, on May 6, 1916, the board or a member of it, after a consideration of con-

ditions at a meeting held at the intersection of No. 14 and the coulee, directed the plaintiff to take certain culverts belonging to the county, which had been used on ditch No. 14, and make a spillway at the intersection of No. 6 with the coulee. The next day the culverts were taken there but before installation a direction was given not to install them. Nothing further was done in 1916, but in 1917, about the first of April, the plaintiff without further leave undertook to install the culverts, made an opening four feet wide and two feet deep in the spoilway, and before he completed the work the surface water broke through and made the opening which the county board proposes filling and which the plaintiff seeks to enjoin it from filling.

The effect of the spoil-bank is to back up the waters on the plaintiff's land and do him continuous damage. The effect of No. 6 carrying the foothills' waters is to bring large quantities down on the south side of the spoil-bank which, with other waters coming to it, cannot get across the ridge at the west except through the ditch which is inadequate to care for it, and, the coulee being obstructed, the land south of the ditch is flooded more than it otherwise would be. In No. 14, two miles north, there is a spillway in the coulee which in some measure at least takes care of a similar but probably less difficult situation.

It must be conceded that when a ditch is established and benefits and damages are assessed the matter is closed except so far as the statute provides for further proceedings, and that the proceeding is not subject to collateral attack as by an injunction. Webb v. Lucas, 125 Minn. 403, 147 N. W. 273, and cases; State v. Lindberg, 120 Minn. 147, 139 N. W. 286, and cases; Jacobson v. County of Lac qui Parle, 119 Minn. 14, 137 N. W. 419; Slingerland v. Conn, 113 Minn. 214, 129 N. W. 376, and cases; Dunnell, Minn. Dig. and 1916 Supp. §§ 2839, 2839a.

The plans and specifications are not before us. It is not affirmatively shown that there was or was not a provision for culverts. It was doubtless intended that the spoil bank should be on the north side of the ditch just where it was placed. Naturally it would not be put on the south, and used for a turnpike, in a level country like this where the general drainage was to the northwest. The ditch was constructed, as it was, and without culverts, just as the county board contemplated. Whether or not it was proper to construct the ditch without culverts the ditch

proceeding is now closed and res adjudicata and it cannot be attacked collaterally as it is sought to do in this case.

In view of G. S. 1913, § 5526, providing that when a ditch runs along a highway, and the earth from it is placed on the highway so as to form a turnpike, the highway or turnpike "shall be provided with sufficient and suitable culverts or openings so as not to obstruct the natural flow of surface water, in time of high water," the writer is of the opinion that a landowner, situated as is the plaintiff, is entitled to the maintenance of culverts or openings to the extent stated, and that the construction of the ditch with none provided, and the closing of the ditch proceeding, do not take away his right and that he is not barred upon the theory of res adjudicata. In his judgment the trial court was right and its order should be affirmed. The view of the majority being to the contrary, the order is reversed.

Order reversed.