## O. U. LUPKES v. TOWN OF CLIFTON AND OTHERS.[1]

January 11, 1924.

No. 23,719.

**Landowner entitled to injunction against removal of roadway embankment along ditch.**

1. Along the south line of plaintiff's half section farm is a county ditch, the material taken therefrom having been used to make an embankment for a town road on the north side of the ditch. A shallow ravine runs across the ditch and roadway onto plaintiff's farm. The ditch with the roadway embankment was designed in part to divert and carry away to the west the surface waters formerly cast upon plaintiff's land by the ravine. Accordingly his land was assessed for benefits in the ditch proceeding: *Held* that plaintiff is entitled to an injunction to prevent defendant town and its highway officials from removing the embankment where it is crossed by the ravine and replacing it with a bridge, and to compel them to restore the embankment to its former condition.

**Ditch order binding as judgment in rem.**

2. A ditch proceeding is one *in rem*, and the order establishing the ditch has the same final and binding force as a judgment *in rem*.

**Property right appurtenant to the land.**

3. A new status is thereby created for the lands affected, and, where a benefit is derived, and land is assessed for such benefit, it becomes a property right, appurtenant to the land, and not to be taken or impaired, even through governmental action, except by due process of law.

[1]Reported in 196 N. W. 666.

Action in the district court for Traverse county against the town of Clifton and others, to restrain defendants from continuing to excavate an embankment and dyke and from building a bridge across the excavation. From an order, Flaherty, J., granting an injunction pendente lite, defendants appealed. Affirmed.

*Murphy & Anderson*, for appellants.

*Houston & McDonald*, for respondent.

STONE, J.

Appeal by defendants from an order granting a temporary injunction restraining them from making and maintaining an opening through an embankment or dyke made by the material excavated from a county ditch, and compelling them to restore the embankment to the condition in which it was when they began their excavation for the proposed opening.

Clifton, in Traverse county, is a typical Red River Valley township. Except for the watercourses about to be mentioned, the land is flat, with a gradual uniform slope to the north and west. Twelve Mile creek is a well defined watercourse running almost due north through the township, about half a mile east of its western boundary.

Plaintiff is the owner of the west $\frac{1}{2}$ of section 8. Running through that tract is a shallow ravine with an average depth of about 2 feet and a width of from 30 to 60 feet. It begins several miles off to the southeast and runs thence, first north of west, and then well north of northwest, through sections 20 and 17 onto plaintiff's farm at about the middle of its southern boundary. Thence it continues north entirely through the farm; leaves it about 40 rods from the northwest corner and reaches Twelve Mile creek about half a mile to the north.

The township is gridironed with ditches. On his northern boundary plaintiff has County Ditch Number 42, and on his south line, County Ditch Number 40. Both of them continue due west into Twelve Mile creek which is within a half mile of plaintiff's western boundary, the west line of section 8.

As to the legal efficacy of the proceedings establishing County Ditch Number 40, there is no question. The excavated material,

pursuant to the report and directions of the engineer, was placed in an embankment or dyke on the north side of the ditch. A public highway, a town road, being located along that line, the embankment as authorized by statute, was so made and placed that it might be utilized, and it has been and is being utilized, for the roadway. Defendants, the town and its officers and employes, claim the right—because they have the supervision and control of the highway and are charged with its maintenance—to do what they will be prevented from doing by the temporary injunction ordered by the learned trial judge.

A final significant fact is that the south half of plaintiff's farm, the southwest quarter of section 8, was subjected to a very substantial assessment and the resulting tax because of the benefits considered by the viewers and the county commissioners to result to that land, through the construction of the ditch. Those benefits were thought to be produced—and the resulting tax was assessed accordingly— not because the ditch would remove any water from plaintiff's land, but on the contrary because the ditch along his southern boundary, where there had been no drain before, with the embankment on the north side of it, would prevent the flow onto his land of the water formerly brought from the southeast by the shallow ravine already referred to.

This description of the situation as it existed after the construction of the ditch (which has its source $3\frac{1}{2}$ miles east of plaintiff's eastern boundary), attempts to make clear two things: (1) The ditch brought to plaintiff's southern boundary waters from the east which otherwise would not have gotten there; (2) it was designed to intercept, at the intersection of the shallow ravine with plaintiff's southern boundary, the waters formerly flowing down that ravine from the southeast, to keep them off plaintiff's farm, and instead carry them due west into Twelve Mile creek.

It is proper to observe that for the first result, had plaintiff not been considered protected by the ditch and dyke, he would have been entitled to damages because of the increased quantity of water thrown onto his land. As to the second result, the interception and diversion of the waters formerly carried onto his land by the ravine,

the fact is emphasized that plaintiff was assessed and has paid for, or is legally bound to pay for, the resulting benefit.

We now come to the controversial stage which the matter has reached. The material in the embankment is the characteristically rich and friable clay and loam for which this section of our state is so justly celebrated. It is subject to easy disintegration and removal by flowing water.

The ditch and ravine intersect almost at a right angle. In times of flood, water has come down the ravine in such quantity and with such force that it has overflowed and washed away part of the embankment. Through this notch the flood water followed the ravine onto and across plaintiff's land. Some attempts were made to fill the break in the roadway. They were not effective, and the town authorities concluded to reopen the ravine across the roadway to its former depth and to bridge the resulting gap. They had begun the excavation through the embankment when stopped by this action and the injunctional order appealed from.

The propriety of the relief granted is the one question presented by this appeal and it is urged that there is nothing about the construction of a drainage ditch, county or judicial, under the statute, which puts the resulting work beyond the power of highway officials, town, county or state, to interfere with it in the proper performance of their duties.

The precise argument is that defendants must maintain the road; that it is their duty to do so, and for them to determine whether, at the point in question, they will retain the embankment or install a bridge.

Defendants are entirely correct in their contention that, if the order for the injunction is upheld, their liberty of action as executive officials will be restrained by judicial mandate. In a matter of such delicacy, touching the functions of a co-ordinate department of government, it is for the judiciary to proceed with the utmost circumspection in order that they may not unwittingly transgress the limits of their own duty.

But the embarrassment always attending such a task is no excuse for its nonperformance. Both executive and judiciary are con-

trolled by law, and it is for the latter to ascertain and apply the law, the submission of a litigated case both presenting the occasion and imposing the duty. It is for the courts to ascertain where the right is, under the law, and to protect that right.

The plaintiff is asserting a right, and claims that if it is to be preserved, it must be done by injunction. Has he the right he claims? That is the only question here, for if it be answered in the affirmative, the injunction follows as a matter of course.

As nature left plaintiff's land and for all the empire building work that he may have done in converting it from mere land into a farm, there is no right in him to have the ravine dammed (as it is by the ditch embankment), and the natural flow of water onto and across his land intercepted. As the owner of the southwest quarter of section 8, if that were his only right, he could not dictate to highway officials the choice as between bridge and embankment.

If he has such a right now, it is only because the natural status has been changed by the establishment of the ditch, and the owner has a resulting property right, appurtenant to the land, to the maintenance of the changed status.

Under our statutes, ditches are established through the exercise, in combination, of the governmental powers of police, eminent domain and taxation. The process is in the main legislative and executive, although the courts assist in the manner required by the law-making powers.

The proceeding establishing a ditch is essentially one in rem. That it is not exclusively judicial, and that the result is not technically a judgment, does not alter its effect. "Determinations which are within the power of the legislative or the executive are and should be final and conclusive" and subject to judicial review only when a justifiable question is presented. This is now an obvious and accomplished fact in the evolution of constitutional government. See "Constitutional Aspects of American Administrative Law" by Judge Cuthbert Pound, 9 Am. Bar Assn. Journal, 409-414.

The legislature has given to the order establishing a public ditch all of the final and binding force of a judgment in rem. Therefore, finally and for all purposes, as against the world, the res, the sub-

ject matter of the proceeding, and all property rights affected thereby, are settled, fixed in a new status to be again altered only by some authority competent to effect a change and proceeding according to law.

Not even government, represented by highway officials or otherwise, can disregard the changed status to the detriment of individual rights of person or property.

It was that essential nature of drainage proceedings that brought this court to the conclusion in Garrett v. Skorstad, 143 Minn. 256, 173 N. W. 406, that the order establishing a ditch was res judicata, and attended by all the effects of a judgment in rem. It matters not that the order—in this case it was the order of the county commissioners—is not strictly judicial in nature. Legislative or executive action is characterized by as much dignity and may be attended by all the finality of judicial action.

Assuming then, as we must, the ample power placed by law in the agency from which the order emanates, our task is to determine its scope and to ascertain the persons and things subject to its restrictive or changing effect.

The res or subject matter of the order establishing a ditch and of the proceedings leading up to it is not alone the new and artificial watercourse to be constructed. All of the lands determined to be damaged or benefited are of the subject matter, the res, concerned in the proceeding and bound by the result. If it is determined that the farm of A is damaged in a fixed sum and the award of the viewers is confirmed, A has just as clear and enforceable a right to collect the amount of his damage so determined as though it were due him under a contract or judgment.

In like manner if it is determined that the farm of B is benefited, and the finding of the viewers to that effect is confirmed, B's land becomes just as liable for the payment of the resulting tax as it is for the general taxes levied for the support of government. And that tax is collected in the same certain manner whether B likes it or not.

Now such an imposition cannot be made under our Constitution except upon the theory that B has been given, and by the construc-

tion of the ditch is assured, the benefit for which he is compelled to pay. If it were otherwise, our method of collecting the cost of ditch construction would not stand for a moment the constitutional due process test.

That being the case, it would be a shocking result indeed if in any manner, however subtle, a way could be found to take away from the landowner the distinct and affirmative benefit forced upon him by his government, and for which his government has compelled him to pay, without making the adequate compensation required by the Constitution when private property is taken for public use.

Unless, under the law, the courts have not only the power but are under the duty to compel all concerned to respect the new status created by governmental authority in the construction of Ditch No. 40, the plaintiff will have been deprived of just such a right, *a property right appurtenant to his farm.* By the ditch proceedings he acquired the right to have the new watercourse intercept the ravine on his south boundary, and to the extent of its capacity to have it keep off his land the waters which formerly flowed onto and across the same through the ravine. A new status was thereby created, to the benefits of which plaintiff is entitled. To hold now that any authority has the right to cut away the embankment or any part of it, or to fill the ditch so as to restore in whole or in part the old drainage onto plaintiff's land, would be to deprive him of a property right. If that is to be done by governmental agency, it must be done under the power of eminent domain after first making adequate compensation.

For purposes of illustration, the case may be likened to that which would arise were a highway to be constructed along plaintiff's north line, and, assuming lawful authority for such an arrangement, plaintiff were to pay the town or county for putting in and maintaining a bridge so as to keep open to its full extent the ravine where it leaves the farm.

In such a situation it would hardly be said that road authorities, simply because they are road authorities, could replace the bridge by a solid embankment, thereby denying plaintiff the benefits for which he paid. No more in the instant case, the converse of the one

supposed, can defendants be permitted to create an opening in the dyke, a wide low spillway from the ditch, where plaintiff has paid, and *has been compelled by governmental authority to pay,* for constructing in unbroken continuity both ditch and embankment.

He is entitled to have the embankment maintained to the height and width at which it was left by the construction of the ditch. The town of Clifton received the benefit of the embankment. Several miles of its road were thereby graded and converted from prairie trail into turnpike. Doubtless, it was assessed for the benefit. But notwithstanding that, the advantage was received *cum onere.* The town has the improved highway resulting from the ditch. It cannot take from plaintiff, nor lessen his enjoyment of, the corresponding benefit accruing to his land from the same source.

Our drainage statutes seem to contemplate just such a situation as that now presented. Section 5523, G. S. 1913, authorizes the use of "dykes, levees and embankments" to confine any watercourse, natural or artificial, to its proper bed. Section 5526 directs that material excavated from a ditch, whenever expedient, shall be placed upon a roadway so as to form a turnpike. Sections 5528-5529 compel the assessing of benefits wherever a road is improved, either by drainage or by betterment through ditch construction, of the "road bed or traveled track." Section 5573 requires us to give the drainage statutes a liberal construction, not only with a view to the main purpose, but also in connection with the "construction and improvement of roads." Under section 5579 "all of the constructions referred to" in section 5523, are a part of a public ditch. By force of statute therefore the embankment here in question is a part of County Ditch Number 40.

Finally, section 5569 penalizes a wilful or negligent obstruction or injury to "any work" constructed under the drainage statutes. Interferences "diverting the water from its proper channel" are especially inhibited. Although they do not realize it, defendants asked the district court, and request us, to permit them to violate this very plain statute. Of course, we cannot do so. On the contrary, we must affirm the action of the trial court, the only effect

of which is to compel obedience, not only to the general law protecting property rights, but also to the express mandates of the statutes.

We have not overlooked the provision of section 5526, requiring in the case of the use of excavated material in an embankment for highway purposes, the installation of "sufficient and suitable culverts or openings so as not to obstruct the natural flow of surface water in time of high water." It is clear that the purpose of the conduits thus provided for is to permit the easy flow of surface waters *from* the adjacent land through the embankment *into* the ditch. Clearly it was not intended to require openings with the reverse effect and to permit the escape onto adjacent lands of waters which the ditch and embankment were intended to divert and confine.

Order affirmed.

QUINN, J. (dissenting.)

I dissent.

It is the duty of a town board to maintain its public highways in suitable condition for use by the public. It is not within the province of the courts to control the discretion of a town board by injunction. The holding in Garrett v. Skorstad, 143 Minn. 256, 173 N. W. 406, should not be extended. In the instant case, plaintiff seeks to compel the board, by injunction, to maintain a public highway in such condition, that it will permanently obstruct the natural flow of surface water, because an artificial ditch which it did not construct and over which it had no control, is not of sufficient capacity to accomplish the purpose for which it was intended, without regard to the effect upon the highway.