IN RE LAKE ELYSIAN HIGH-WATER LEVEL.
W. F. CLARKE AND OTHERS v. HERMAN C. WENZEL
AND OTHERS.[1]

June 28, 1940.

Nos. 32,458, 32,464, 32,469.

[1]Reported in 293 N. W. 140.

*Smith & Smith,* for appellants Herman C. Wenzel, J. T. Schlesselman, W. R. Minard, August Berndt, and E. W. Owen.

*R. Edison Barr, pro se* and for appellants Louie Hruska and John Richard Clarke.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Mandt Torrison,* Special Assistant Attorney General, for appellants Commissioner of Conservation and the State.

*Wilson & Blethen,* for respondents.

JULIUS J. OLSON, JUSTICE.

Three appeals have been consolidated upon a single record, but counsel for the respective appellants have submitted separate briefs. As the issues are essentially the same, we shall dispose of them as though there were but one appellant.

The controlling facts as found by the commissioner of conservation may be thus summarized: On and prior to 1906

Lake Elysian was a meandered body of clean and clear water with well defined banks, containing fish of many kinds, with a large watershed estimated at some 50 square miles, and located in Le Sueur and Waseca counties. The natural, ordinary high-water level was 1,108 feet, mean sea level datum. During that year the county board of Waseca county established ditch No. 6 pursuant to the provisions of L. 1905, c. 230. The engineer in charge of that project reported to the board that:

"The object sought in the construction of this ditch is to so enlarge the so-called outlet of Lake Elysian * * * so as to more *effectually drain the slough lands lying adjacent to the said outlet and to control the sudden rises and floods that overflow the low lands lying adjacent to the shores of Lake Elysian. No reclaiming or drying of the lake bed of said lake is sought or expected."* (Italics supplied.)

The board in their resolution establishing the ditch said:

*"We,* the board of county commissioners * * * *do hereby locate and establish the said ditch according to the report* and the specification of *said civil engineer* made and filed herein." (Italics supplied.)

The lands of many people were assessed for estimated benefits, and the owners have duly paid the ditch liens filed against their respective properties. During the many years which have since elapsed nothing was ever done by anyone, so far as the record discloses, in any way to question the propriety or legality of the ditch as thus established. But as time went on, due to the natural erosion of the outlet, especially during periods of high water, "ably assisted by human endeavor," the ditch gradually became deepened and extended into the lake so that where theretofore the low-water level was approximately 1,016.2 feet since such construction it has been reduced to 1,014.5 feet, mean sea level datum. Thus the lake level, because of the ditch and subsequent erosion, has been substantially reduced from the natural and

normal high-water mark of 1,018 feet to the present level of 1,014.5 feet.

The present proceedings were instituted by the commissioner of conservation pursuant to L. 1937, c. 468, 3 Mason Minn. St. 1938 Supp. §§ 6602-51 to 6602-69, upon his own initiative. The principal objective sought was to establish the water level of the lake at a higher level, 1,016.5 feet, by construction of a dam or dyke to control the water level at that height. Pursuant to the provisions of the act, hearings were had by and before him at which all parties desiring to be heard were freely accorded that privilege and were so heard. Upon proof so furnished by those for and against the establishment of the project and on April 22, 1939, the commissioner made findings of fact reciting what has been related and, in addition, that the lowering of the lake level "has been very detrimental to the fish life" of the lake; "has resulted in much contamination and pollution because of the increased erosion of banks and fields adjacent to the lake; that the lake is now a yellow, muddy looking body of water; is unfit for bathing; that great areas of sandy beach and shore have been exposed [and are] growing up to thistles"; that a restoration of the lake level to what it was prior to the construction of the ditch will prove of public benefit by restoring its recreational facilities; and that the people of two incorporated villages located upon or near its shores would be benefited by the construction of a suitable dam so as to maintain "a stabilized higher elevation" of the water level of the lake.

The findings recognize that over a period of many years and because of the lower lake levels created by reason of the construction of the ditch and the erosion thereafter taking place a restoration of the water level, such as ordered, would cause substantial damage to lands "adjacent to and in the vicinity" of the lake. Their use "will be substantially depreciated"; that the owner of a farm who has at an expense of approximately $5,000 laid tile into the lake upon the as-

sumption that the lake as thus lowered would remain will suffer substantially a total loss to his tiling system and to the property served by it. But he was of the opinion that in view of the limited purpose and objective of the county ditch, as specified by the engineer and approved by the county board, the resulting harm and damages could not be considered as in any way controlling his duty and responsibility in respect to the establishment of the level found by him to be the proper one upon the proof submitted. His conclusion was that "a level of 1,016.5 is the desirable stabilized level to be maintained * * *; that the maintenance of such a level would allow adequate storage capacity in the lake to accommodate any anticipated rains or floods within the natural ordinary high [water level] of 1,018, until such rains or floods may have drained through the outlet of said lake." He further found it to be "feasible to construct a dyke and dam [at a stated location], * * * the overflow control section of which should be a dam approximately 375 feet in length with fixed crest elevations, 300 feet of which should be crest elevation of 1,017.5, 60 feet with a crest elevation of 1,016.5 and 15 feet with a crest elevation of 1,015.5, the latter 15-foot section to be adapted for the use of one foot of stop logs or flash boards."

Interested owners of lands assessed for ditch benefits appealed to the district court, and there further evidence was submitted. The commissioner objected thereto, taking the view that the statute under which the proceeding was had and more particularly with reference to L. 1939, c. 327, § 1, 3 Mason Minn. St. 1940 Supp. § 6602-57, the latter requiring that "all testimony shall be taken under oath and the right of cross-examination shall be accorded"; that the record so made is to contain all testimony and is to be "preserved together with all exhibits entered, and all objections to evidence shall be recorded"; that the orders of the commissioner are to be based upon findings of fact and made only upon competent evidence; that therefore these provisions disclose

a legislative intent that appeals to the district court must be limited in scope to a review of the proceedings had before the commissioner. Respondents, however, take the view that L. 1937, c. 468, § 12, 3 Mason Minn. St. 1938 Supp. § 6602-62, definitely provides for what kind of hearing is to be had on such appeal, their argument being to the effect that, while the proceeding before the district court is not a trial *de novo,* yet under established practice and decisions the district court on such appeal "examines the whole matter in controversy. It receives evidence to determine whether the findings of fact made by the commission can be sustained." While the court "does not try the matter anew as an administrative body nor substitute its findings for those of the commission," yet within the limits mentioned such evidence is appropriate and that the district court was right in hearing such evidence. Hence, it is argued, our review must be in the light of not only the evidence taken by and before the commissioner but also that taken and recorded in the district court.

Respondents cite and rely upon such cases as State v. G. N. Ry. Co. 130 Minn. 57, 59, 60, 153 N. W. 247, Ann. Cas. 1917B, 1201, and In re C. M. St. P. & P. R. Co. (D. C.) 50 F. (2d) 430, 433, where our cases on this phase are reviewed by Judge Sanborn.

■ Much can be said to sustain both contentions. However, an examination of the record made by and before the commissioner, as well as the additional proof furnished on appeal in the district court, leads to the conclusion that there is no substantial lack of harmony. The difficulty does not arise from difference in respect of proof but rather because the district court adopted the view that the landowners who had been assessed for the ditch (including the one who laid his tile at so much expense and maintained it over a period of years) had acquired a "new status" and as such their rights cannot now be infringed upon without adequate compensation. Their "new status" claim has for its basis that

by the establishment of the ditch and the assessments levied for its construction they acquired "a property right, appurtenant to the land, and not to be taken or impaired, even through governmental action, except by due process of law." (Third syllabus paragraph, Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666.)

No one will now deny that if respondents' "new status" contentions are soundly founded the result below must be affirmed. This would necessarily follow in view of Lupkes v. Town of Clifton, *supra*. The reason there assigned may be summarized as follows (157 Minn. 498-499, 196 N. W. 668):

"Now such an imposition [ditch assessment] cannot be made under our Constitution except upon the theory that B has been given, and by the construction of the ditch is assured, the benefit for which he is compelled to pay. If it were otherwise, our method of collecting the cost of ditch construction would not stand for a moment the constitutional due process test."

■ But, as we have seen, the claim contended for cannot be sustained for the reason that the only relief sought in "the construction of this ditch is to so enlarge the * * * outlet * * * so as to more effectually drain the slough lands lying adjacent to the said outlet and to control the sudden rises and floods that overflow the low lands lying adjacent to the shores of Lake Elysian. No reclaiming or drying of the lake bed of said lake is sought or expected."

The engineer's report was the basis upon which the ditch was established and assessments for its costs levied. Upon that phase respondents are now foreclosed against any claim to the contrary. And the county board's order or resolution establishing the ditch confirmed the engineer's plans and report. So, unless adverse user and possession have created an additional right to that which was obviously theirs by virtue of its establishment and the payment of its cost enters into the picture, they have nothing now of which they may

justly complain. They are entitled to no more in that respect than the equivalent of what nature provided for their lands. The county board did not and could not lawfully go beyond what the drainage law authorized. We think the drainage law requires that natural conditions in respect to lakes of this type shall be preserved.

"Plaintiffs are entitled to no more than the equivalent of what nature provided for their lands. If the county did no more than the law authorized, there is no liability. The statute contemplates that the natural conditions shall be preserved." Melander v. County of Freeborn, 170 Minn. 378, 380, 212 N. W. 590, 591.

Or, as said in Stenberg v. County of Blue Earth, 112 Minn. 117, 120, 127 N. W. 496, 497:

"No riparian owner has a right to complain of improvements by the public whereby the water is maintained in the condition which nature has given it. * * * The law justified the maintenance of the lake at its natural and usual height and level."

Interesting and instructive too, and of controlling importance here, is In re Minnetonka Lake Improvement, 56 Minn. 513, 58 N. W. 295, 45 A. S. R. 494, where Mr. Justice Mitchell with characteristic clarity defined high-water mark, the rights of the riparian owner to the use of his property to that point even if his land is subject to frequent overflow, and the necessity of compensating him if the public by any improvement causes damages thereto. Here that right has not been encroached by the commissioner. Everything lawfully possessed by the owners of assessed land they still retain. We find no violation here of the principles laid down in the cases cited. In all of them the right of the state to maintain lakes of the type of Elysian at their natural levels was sustained. The most that can be said for respondents' rights is that under the guise of the mentioned drainage improvement and as the result of erosions lending

aid thereto their low and wet lands have been greatly improved. Much of what they thought was theirs did not exist under the law and the proceedings had. We cannot give them rights beyond that. When they secured the construction of the ditch they knew or should have known upon what conditions the project was founded. Neither the viewers in assessing benefits nor the county board in establishing the ditch could give them any more than what the drainage law permitted and the ditch proceedings themselves provided.

■ Respondents' contention that lowering the water level of the lake was a necessary and intended factor in the establishment of the ditch cannot be sustained. As we have already pointed out, neither the drainage law (L. 1905, c. 230, § 1) nor the ditch proceeding itself permits the entertainment of any such notion. Whether a lake may be "lowered" or "drained" in a given case depends for its validity upon statutory authority, properly invoked, with subsequent compliance therewith. If a lake may be lowered under such a situation as we have here, at what point is the lowering process to end, especially where constant erosion is taking place? Is it not obvious that to the extent of the "lowered" areas there has been "drainage"? This seems to have been the view in In re Petition of Jensen, 159 Minn. 140, 141, 198 N. W. 455, where petitioners for a drainage ditch sought to have Swan Lake lowered "four feet below the present water level, and your petitioners are only asking for * * * a ditch that will accomplish such result." On that phase the court said [159 Minn. 142]:

"The proposed ditch is not intended to *drain* the lake, but only to *lower* the water therein 4 feet. * * * Since this proceeding was initiated, two cases have been decided in which it was held that the *drainage* of such lakes is not authorized by the statute under which this proceeding was brought." Citing the mentioned cases. (Italics supplied.)

As will be noted, the court in sustaining the order below

dismissing the petition treated the "lowering" asked for exactly the same as if petitioners had asked to have the lake "drained." *Cf.* Bloomquist v. Sanders, 162 Minn. 296, 202 N. W. 496.

■ Nor are we persuaded that the long delay occurring between the establishment of the ditch and the present proceedings in any way tends to diminish the state's right to proceed as here. As against the sovereign, absent statutory limitation, no prescriptive rights can be obtained by anyone. Counsel has cited no authority holding otherwise, and we have discovered none so holding.

■ We conclude that upon the record before us the commissioner was justified in establishing the project. The court's jurisdiction, even granting respondents' claim, is limited to the reception of evidence (130 Minn. 60, 153 N. W. 248, Ann. Cas. 1917B, 1201) "to determine whether findings of fact are sustainable." It does not (*Id.* p. 59, 153 N. W. 248, Ann. Cas. 1917B, 1201) "try the matter anew as an administrative body, substituting its findings for those of" the commissioner.

The order of the district court is reversed with directions to affirm the commissioner's order.

So ordered.

MR. CHIEF JUSTICE . GALLAGHER took no part in the consideration or decision of this case.