## LAUREL L. ELDRED v. DIVISION OF EMPLOYMENT AND SECURITY, DEPARTMENT OF SOCIAL SECURITY.[1]

December 13, 1940.

No. 32,729.

[1]Reported in 295 N. W. 412.

*Nichols, Mullin & Farnand,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Kent C. van den Berg,* Special Assistant Attorney General, for respondent.

JULIUS J. OLSON, JUSTICE.

This is an appeal from a decision of the director of the division of employment and security sustaining as against constitutional attack 3 Mason Minn. St. 1938 Supp. § 4337-22(h)(6), of our unemployment compensation law as amended by L. 1939, c. 443 (3 Mason Minn. St. 1940 Supp. § 4337-22H[6][k]). We shall hereafter refer to appellant as plaintiff and to respondent as defendant.

Plaintiff, being then unemployed, on July 5, 1940, filed a claim for benefits asserted by him to be due by virtue of our unemployment act. Justification for denial of his right to recover his claimed benefits depends upon the validity of the mentioned subsection, an amendment to the original act. It is conceded that he and his co-workers were less than eight in number and were employed at and rendered their services for their employer in the

borough of Belle Plaine, a municipality having a population of much less than 10,000, namely, about 1,400.

Plaintiff's attack is that the amendment violates Minn. Const. art. 4, §§ 33 and 34, and art. 9, § 1; also U. S. Const. Amend. XIV. There are no issues of fact.

The challenged enactment reads (1940 Supp. § 4337-22H[6][k]):

"H(6) The term 'employment' shall not include:

\* \* \* \* \*

"(k) Services performed subsequent to December 31, 1939, outside of the corporate limits of a city, village, or borough of 10,000 population or more, as determined by the most recent United States census, for an employer who has paid all contributions due and payable for employment during all past periods and who is not subject to Title IX of the Federal Social Security Act [Mason's USCA, Title 42, §§ 1101 to 1110], as now in force or hereafter amended, provided the services of all of such employer's employes are performed outside of such corporate limits. For the purpose of this provision service shall be deemed to be performed outside of such corporate limits if (1) performed entirely outside of such corporate limits; or (2) performed both outside and within such corporate limits, if the service performed within such corporate limits is incidental to the individual's service outside such corporate limits and is temporary or transitory in nature or consists of isolated transactions."

To do away with any notion that plaintiff had any vested right to this or any other kind of relief or benefit, it is well to bear in mind that our original unemployment compensation law, Ex. Sess. L. 1936, c. 2, § 19 (3 Mason Minn. St. 1938 Supp. § 4337-39), provided:

"The legislature reserves the right to amend or repeal all or any part of this Act at any time; and there shall be no vested private right of any kind against such amendment or repeal. All the rights, privileges, or immunities conferred by this Act or by acts done pursuant thereto shall exist subject to the power of the legislature to amend or repeal this Act at any time."

It is therefore plainly to be seen that plaintiff's right to participate in the benefits created by that act depends upon its continued existence, his continued eligibility so to share, and its applicability to him only so long as it places him upon a footing of equality with others similarly situated.

It is, of course, a well established principle that courts are not, as such, concerned with the wisdom of legislative enactments. The legislature is of necessity vested with broad powers to devise ways and means to alleviate adverse and unequal social and economic ills and conditions and to provide for those in want from whatever cause. Such needs have always been matters of public concern and importance and have generally met with prompt and generous legislative response. Just what is to be done in any given circumstance evidently must lie within legislative discretion, limited and subject only to constitutional prohibition. Whether unemployment is to be provided for by unemployment compensation such as ours, or by some other method, is purely a legislative problem. Upon what basis, then, can it be said that plaintiff, under the circumstances here disclosed, has any right to question, upon a constitutional basis, the classification made by this amendment? He is possessed of no vested rights adversely affected by the amendment, since what the legislature has given it can take away, at least as to all benefits not already accrued when the amendment became effective. In any event, the burden is on plaintiff to show that the act has adversely affected some substantial right belonging to him which is protected by the constitution. Unless he does so he is not in position to challenge its validity. Mesaba Loan Co. v. Sher, 203 Minn. 589, 595, 282 N. W. 823; Lyman v. Chase, 178 Minn. 244, 249, 226 N. W. 633, 842; State v. Phillips, 176 Minn. 472, 478, 223 N. W. 912.

As was said in Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 576, 35 S. Ct. 167, 169, 59 L. ed. 364, 368:

"The argument based upon such discrimination, so far as it affects employes by themselves considered, cannot be decisive; for it is the well-settled rule of this court that it only hears objections to

the constitutionality of laws from those who are themselves affected by its alleged unconstitutionality in the feature complained of."

But we prefer to consider and determine the cause on its merits, since we are of the view that the amendment can be sustained against the attack made upon it.

The constitutional provisions upon which plaintiff relies may all be boiled down to one question: Does the quoted section create an arbitrary class, thereby offending constitutional prohibition against special legislation and inequalities?

As already noted, the act does not deal with personal or property rights. Rather, it is intended to operate exclusively in the field of social welfare. Neither an individual nor any locality has any vested right to any particular form of this kind of relief or other benefit except such as the lawmakers themselves from time to time provide.

Important to bear in mind is the fact that our unemployment compensation system is closely integrated with the federal system, which also excepts all employers of less than eight persons. Of course the state might enter into a field where less than that number are employed. Such was our original act. Federal law does not create a barrier. So our treatment of the act should be upon the same basis as if our original act had implicitly followed federal law and as if the present amendment were included therein. If that had been done and the legislature had then concluded to enact a new provision extending the application of the law to employers of less than eight persons in the urban region but had left out employers of less than eight in the rural region, would that extension of unemployment benefits be violative of the constitutional provisions upon which reliance is placed?

Certain general rules used to test the constitutionality of statutory classifications should be mentioned.

■ Courts will not consider the propriety or wisdom of legislative classification unless the classification clearly appears to have no rational basis. "The question of classification is primarily for

the legislature. It is not enough that we do not see all the facts justifying the classification. To declare the statute unconstitutional, we must say that the legislature could not reasonably and intelligently make the classification." (Citing cases.) Gunderson v. Williams, 175 Minn. 316, 317, 221 N. W. 231, 232. "The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility." Clark v. Paul Gray, Inc. 306 U. S. 583, 594, 59 S. Ct. 744, 750, 83 L. ed. 1001, 1010. In State v. Pehrson, 205 Minn. 573, 577, 578, 287 N. W. 313, the principles to be applied in cases involving classification are cited. What we there said need not be repeated.

■ As to the argument that employes in localities of less than 10,000 are just as much in need of the benefits of the law as are those above that number, Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 519, 57 S. Ct. 868, 877, 81 L. ed. 1245, 1259, 109 A. L. R. 1327, furnishes an adequate answer. There substantially every argument made by plaintiff here was made, but the classification was sustained, the court saying:

"In establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at the evil where it is most felt [citing cases], or where it is most practicable to deal with it [citing case]. It may exclude others whose need is less [citing cases], or whose effective aid is attended by inconvenience which is greater [citing cases]."

Cf. Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. ed. 1279, 109 A. L. R. 1293.

■ From tables compiled by the division of employment and security (Record pp. 54-55), it is fairly apparent that the group of urban localities having a population of 10,000 or more shows a higher percentage of unemployment among the average number of employes who work for employers of less than eight, considered as a group, than those who work in the rural areas, also considered as a group. It is also a matter of common knowledge that the smaller enterprises are located in rural districts. Generally

speaking, there is less distress in such localities than in the larger urban centers. That is why the relief problem is, and has been, more acute there than in the rural regions.

In the Carmichael and Steward cases the greater per capita cost of administering the act among the smaller units over those of larger groups was considered an obvious fact and judicially noticed without statistical aid. Here it is shown that administrative expense in country districts is much greater per capita than in the counties having a large urban population, such as Hennepin and Ramsey. In the area known as District IV (Fergus Falls) the per capita cost was $2.98 as against $1.54 for District VII (Minneapolis). (Record p. 63.) All these are factors which the legislature could well consider as a basis for distinction and consequent differentiation in classification.

Enough has been said, we think, to demonstrate that the conflicting interests and requirements in the different localities of the state, creating as they do complex social problems, afford a reasonable basis for the classification made. And since the legislature is "free to recognize degrees of harm * * * it may confine its restrictions to those classes of cases where the need is deemed to be clearest." It may " 'proceed cautiously, step by step,' and * * * it is not necessary that the prohibition 'should be couched in all-embracing terms.' " Miller v. Wilson, 236 U. S. 373, 384, 35 S. Ct. 342, 344, 59 L. ed. 628, 632, L. R. A. 1915F, 829. Or, as was said in State ex rel. Beek v. Wagener, 77 Minn. 483, 498, 80 N. W. 633, 636, 778, 1134, 46 L. R. A. 442, 77 A. S. R. 681: "The legislature may proceed as the public welfare and prosperity of the citizens it represents may seem to demand."

The decision of the director is right and therefore affirmed.