### STATE v. GEORGE DONOVAN AND OTHERS.[1]

December 15, 1944.

No. 33,904.

*Bundlie, Kelley & Finley* and *Joseph A. Maun,* for appellants.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for the State.

[1]Reported in 16 N. W. (2d) 897.

MAGNEY, JUSTICE.

Action by the state to recover of defendants the amount of certain "war risk contributions," under Mason St. 1940 Supp. § 4337-24, a provision of the state employment and security act, as amended by L. 1941, c. 554, § 3, and by L. 1943, c. 650, § 2. The pertinent portions of the amended section read as follows:

"E(1) Any employer who subsequent to December 31, 1940, has become or becomes subject to Chapter 23 AA, Mason's Minnesota Statutes, 1940 Supplement, as amended by Laws 1941, Chapter 554, and as amended by this act, whose total current payroll, as defined in this subsection, for any calendar quarter within the period beginning January 1, 1942, and ending June 30, 1945, exceeds $50,000 shall pay war risk contributions, and any other employer whose total current payroll, as defined in this subsection, for any calendar quarter within such period exceeds $50,000, which has increased 100% or more over and above his normal payroll for the corresponding calendar quarter in 1940, shall in addition to his normal contributions pay war risk contributions on that part of his current payroll over and above 200% of his normal payroll, for the first such calendar quarter or the quarter commencing January 1, 1943, whichever is later and for each calendar quarter thereafter to and including June 30, 1945.

\* \* \* \* \*

"(3) 'War risk contributions' means the additional contributions required under this subsection at a rate equal to 3%."

The sums claimed to be due are for the second and third calendar quarters of 1943. By demurrer, defendants challenged the constitutionality of the statute. The demurrer was overruled with a certification that the question raised was important and doubtful. Defendants appeal from the order.

Defendants entered business subsequent to December 31, 1940, and their payroll for the second and third calendar quarters of 1943 exceeded $50,000. They claim that the statute is unconstitutional because it discriminates against them and other employers

who entered business *after* December 31, 1940, by imposing a three percent war risk contribution tax upon them, whereas others, not only similarly but identically circumstanced except for the fact that they entered business and became subject to the act prior to that date, are either exempt from the tax or are required to pay on a lesser portion of their payroll. It is conceded that the question of constitutionality may be raised by demurrer.

Subsection E(1) of the statute classifies employers. Those employers whose current payrolls for the period between January 1, 1942, and June 30, 1945, are less than $50,000 per quarter are not subject to the war risk contribution provision of the statute. Those whose payrolls exceed $50,000 per quarter are divided into three classes: (1) Employers who became subject to the state employment and security act after December 31, 1940, are subject to the tax on their entire payroll; (2) employers who were subject to the act prior to January 1, 1941, but whose payroll in any calendar quarter between January 1, 1942, and June 30, 1945, has increased 100 percent or more over and above their normal payroll for the corresponding calendar quarter in 1940, are subject to the tax on that part of their payrolls in excess of 200 percent of the normal payroll; (3) employers whose payroll exceeds $50,000 per quarter other than those in groups (1) and (2) pay no war risk contribution tax. We are asked to determine whether such a classification for taxation purposes violates the provisions of the federal and state constitutions affording to all persons the equal protection of the laws and requiring that taxes be uniform upon the same class of subjects.

The question of classification has been considered by this court in several recent cases, the latest being State v. Minnesota Federal S. & L. Assn. 218 Minn. 229, 15 N. W. (2d) 568. In Montgomery Ward & Co. Inc. v. Commr. of Taxation, 216 Minn. 307, 309-311, 12 N. W. (2d) 625, 627, this court stated the law to be as follows:

"We have held that the legislature 'has a wide discretion in classifying property for the purposes of taxation, but the classifica-

tion must be based on differences which furnish a reasonable ground for making a distinction between the several classes. The differences must not be so wanting in substance that the classification results in permitting one to escape a burden imposed on another under substantially similar circumstances and conditions.' [Cases cited.]

\* \* \* \* \*

"\* \* \* Classification as to subject matter is permissible if there is a reasonable ground for making a distinction (*i. e.*, some substantial difference between the subjects classified) and if the classification made bears a reasonable relation to a permitted end of governmental action. [Cases cited.] \* \* \* The legislature has a broad discretion in determining that classification has a reasonable relation to a governmental purpose, and the courts should not interfere unless there is palpable error. [Cases cited.]

"Whether a particular classification does or does not deny equal protection of the laws depends upon the peculiar situation presented in each case."

The amendment to the statute in question was added by the 1943 legislative session. This country had then been at war for more than a year. The differences between prewar and war economy were then clearly apparent. Before December 7, 1941, industry in this country was engaged in the production of war material on a large scale under the so-called lend-lease program, but our entry into the war required sudden and tremendous expansion, culminating in a war effort unsurpassed in history. This nation and its allies had to be supplied. Manpower was drawn from wherever it could be found. Men and women who had never previously been on a payroll in industry were employed in war-goods production. When the war ends, the manufacture of this type of goods will suddenly cease. The millions who are now thus employed will be out of jobs, and, unless sufficient peacetime work is made available, there will be unemployment with the resulting difficult problems. The members of the legislature knew and appreciated these facts, since they were as apparent to them as to everyone else. They were

faced with a serious problem. A vast number of persons now employed in war industries might at any time find themselves unemployed by reason of the cessation of hostilities and be entitled to draw benefits from the unemployment fund built up under the state employment and security act on a normal peacetime experience basis. That fund has been contributed to by large and small industries over a period of years. Abnormal unemployment after the war could readily wipe out the fund and thus deprive those entitled thereto to unemployment benefits. New war industries had contributed very little to the fund, and all war industries have paid at a tax rate based upon peacetime experience. As the heavy drain upon the fund will come from unemployment caused by the collapse of the war industries, great injustice will result to all prewar employers whose contributions for years have gone into this fund and made it substantial. Many of these employers have not profited by the war, but actually have been adversely affected. It seems reasonable, therefore, that increased contributions to the fund, which faced possible depletion, should come from those who create the greatest hazards to it. Many of these employers came into being because of the war or greatly increased their growth by reason thereof. Their potential drain upon the fund may be entirely out of proportion to their contributions. Whether such employers were engaged in the manufacture of war goods or not is immaterial. Their payrolls may have greatly increased by reason of the wartime economy, and, with the ending of the war, there is strong possibility that they will be forced to lay off large numbers of employes and thus create a heavy drain on the fund. In the judgment of the legislature, the situation, as they saw it, required the enactment of the law in question. In Eldred v. Division of Employment and Security, 209 Minn. 58, 63, 295 N. W. 412, 415, this language used by this court is pertinent here:

"* * * The determination of the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility."

We have already described the classes into which employers are divided under the act. Defendants contend that it is apparent from the act that the time element is the sole basis of classification and that, under court decisions, such classification has been held to be in violation of constitutional provisions. They claim that the statute discriminates against certain employers, including themselves, solely by reason of the fact that they commenced business *after* December 31, 1940, and that the distinction made between such employers and those who commenced business *on or prior* to that date does not rest upon any difference having a fair and substantial relation to the object of the legislation, and consequently that all persons similarly circumstanced are not treated alike. They claim that the state demands of them that they pay a war risk contribution tax of three percent upon their entire payroll for no other reason than that they became subject to the act *after* December 31, 1940, regardless of whether they are engaged in the manufacture of munitions with the probability of a cessation of business at the close of the war. In support of their position, defendants cite Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 48 S. Ct. 423, 72 L. ed. 770; Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. ed. 557, 43 A. L. R. 1224; Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. ed. 772; Binney v. Long, 299 U. S. 280, 57 S. Ct. 206, 81 L. ed. 239; Mayflower Farms, Inc. v. Ten Eyck, 297 U. S. 266, 56 S. Ct. 457, 80 L. ed. 675; and State v. Luscher, 157 Minn. 192, 195 N. W. 914. If space permitted, each one of these cases would be discussed in full. In the majority of them, the court held that the classification was wholly arbitrary, that it was based solely on the time element, and bore no just relation to the intended result or object of the legislation. In the instant case, the legislature selected December 31, 1940, as the "before" and "after" date for purposes of taxation. That date represents more than a mere calendar date. It represents the dividing line between prewar normal peacetime economy and abnormal war economy. The provisions of the act would have been too indefinite if the legislature had merely said that any employer who

became subject to the act after the war economy had set in would be subject to a "war risk contribution" tax. So a date had to be selected to separate war economy from prewar economy, and December 31, 1940, was the date selected. The period before and the period after that date are entirely different in their economic, as well as in many other, aspects, and enough facts have been set out to show that there is a reasonable and logical ground for making a distinction, that there is a substantial difference between the subjects classified, and that the classification made here "bears a reasonable relation to a permitted end of governmental action." There is a real reason for the classification. It is not the result of "accident," "whim," "caprice," or "hostility" to any individual or class of individuals.

Affirmed.