## SWEN HYLEN AND ANOTHER v.
## MILTON OWENS AND OTHERS.

251 N. W. 2d 858.

March 11, 1977—No. 46646.

*Piper, Sunde & Olson* and *LaMar T. Piper,* for appellants.

*McLean, Peterson, Sullivan & Haugh, Charles T. Peterson,* and *John F. Corbey,* County Attorney, for respondents.

SCOTT, JUSTICE.

This is an appeal from an order for a declaratory judgment finding L. 1975, c. 249, constitutional. We affirm.

In March 1967 a petition was filed in Blue Earth County for the improvement of Blue Earth County Ditch No. 27, originally established in 1911. The improvement was challenged by plaintiffs, Swen and Irene Hylen, and this court reversed on the ground that the petition could not include any upstream extension under Minn. St. 106.501.[1]

A petition was again filed for improvement of County Ditch No. 27 on April 7, 1970. The viewers' report filed October 14 of that year established benefits to landowners of $138,919 and damages of $4,858. The Board of County Commissioners let contracts on June 19, 1972, totaling $97,346.73.[2] Three years later, after our decision upholding the benefits and damages determination,[3] the county board readvertised for bids. The total of these low bids, plus costs, expenses and interest already charged to the ditch account was $146,554.91, an amount well in excess of the benefits determined in 1970. This overrun would have been impermissible under Minn. St. 106.201, subd. 2, which reads:

"If the board or court shall find that the engineer's and viewers' reports have been made and all other proceedings in the mat-

---

[1] In re Petition of Oldenborg v. Hylen, 286 Minn. 413, 176 N. W. 2d 78 (1970).

[2] The 2-year delay was due to plaintiffs' challenge of the establishment of the ditch. We upheld the establishment in In re Petition of Sandt v. Hylen, 292 Minn. 498, 195 N. W. 2d 831 (1972).

[3] In re Petition of Sandt v. Hylen, 301 Minn. 475, 224 N. W. 2d 342 (1974).

ter had in accordance with law, *that the estimated benefits are greater than the total estimated cost,* including damages, that the damages and benefits have been duly determined, that the proposed drainage system will be of public utility and benefit, and will promote the public health, that the proposed system is practicable, and that such reports as made or amended are complete, just and correct, then the board or court shall by order containing such findings, establish the drainage improvement as reported or amended, and adopt and confirm the viewers' report as made or amended." (Italics supplied.)

During the period of litigation, construction costs soared due to inflation and it became apparent that the ditch could not be completed within the statutory limits. Therefore, legislative authority was gained by the passage of L. 1975, c. 249, § 1, to authorize spending up to $150,000:

"Section 1. Subdivision 1. Notwithstanding the provisions of Minnesota Statutes, Chapter 106, or any other law to the contrary, the county board of Blue Earth county may by contract expend a sum not to exceed $150,000 for the completion of the improvement of that certain county ditch heretofore designated county ditch no. 27, and to issue the general obligation drainage bonds of the county pursuant to Minnesota Statutes, Chapter 106 in order to provide the sums expended by authority of this section and all other costs incident thereto.

"Subd. 2. Any contract heretofore entered into for the construction of said improvement of county ditch no. 27 may be renegotiated, or if necessary, bids may be resolicited and new contracts let to provide for construction cost increases which, due to inflation, have accrued since the original contracts were let, and any such construction cost increase shall be paid for by special assessments levied against the benefited landowners in the same proportion and manner as determined by the viewer's report previously approved by the county board."

Laws 1976, c. 157, § 1, increased the permissible expenditure limit to a sum not to exceed $180,000.

Plaintiffs contend that L. 1975, c. 249, is unconstitutional on three grounds: (1) due process, (2) just compensation, and (3) impairment of contractual obligations.[4] The relevant provisions of the Minnesota Constitution are art. 1, §§ 7, 11, and 13, which provide as follows:

"Sec. 7.   No person shall be * * * deprived of life, liberty or property without due process of law. * * *

\* * * * *

"Sec. 11.   No * * * law impairing the obligation of contracts shall be passed * * *.

\* * * * *

"Sec. 13.   Private property shall not be taken, destroyed or damaged for public use without just compensation therefor * * *."

See, also, U. S. Const. art. I, § 10; U. S. Const. Amend. V and XIV.

■   Plaintiffs' procedural due process claim appears to rest in the fact that they "were not informed of the proposed legislation [c. 249] and were given no opportunity to be heard thereon." The Supreme Court of the United States has held that in cases involving the taking of property by legislative action, due process does not require notice and hearing to affected landowners. Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. ed. 135 (1919); Georgia v. Chattanooga, 264 U. S. 472, 44 S. Ct. 369, 68 L. ed. 796 (1924); Bi-Metallic Co. v. Colorado, 239 U. S. 441, 36 S. Ct. 141, 60 L. ed. 372 (1915). This court has held likewise. Housing and Redevelopment Authority of St. Paul v. Greenman, 255 Minn. 396, 96 N. W. 2d 673 (1959). The statement of Mr. Justice Holmes in Bi-Metallic Co. v. Colorado, *supra*, although made in 1915, still summarizes the law on this subject:

"Where a rule of conduct applies to more than a few people

---

[4] Plaintiffs have challenged both c. 249 and the 1976 amendment on the same grounds. Since the two enactments must stand or fall together, "c. 249" will be used throughout for convenience.

it is impracticable that every one should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." 239 U. S. 445, 36 S. Ct. 142, 60 L. ed. 375.

Plaintiffs were able to make their objections to the ditch known at many points during the procedural history of this case, where their right to be heard was unquestioned. This due process right does not, however, extend to c. 249 itself, which affects all the people of Blue Earth County and does not operate to plaintiffs' special detriment. Chapter 249 is a legislative enactment which is general in its application and, as such, is not subject to the requirements of due process in the procedural sense.[5]

Due process also requires that legislative enactments not be arbitrary or capricious or, stated another way, that they be a reasonable means to a permissible objective. Nebbia v. New York, 291 U. S. 502, 54 S. Ct. 505, 78 L. ed. 940, 89 A. L. R. 1469 (1934); West Coast Hotel Co. v. Parrish, 300 U. S. 379, 57 S. Ct. 578, 81 L. ed. 703, 108 A. L. R. 1330 (1937); Minn. Wheat Growers Co-op. Market. Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420 (1925).

In this case the legislature was faced with the problem of a duly authorized land-improvement project about to exceed its funding limit due to delays and inflation. Lack of action would result in the waste of county funds already expended for the ditch and would deprive assessed landowners of the benefits of the project. The legislature sought by c. 249 to allow the ditch

---

[5] This is not to say that c. 249 is not special legislation within the meaning of Minn. Const. art. 12, § 1. The validity of this enactment is established since it satisfies the requirements of art. 12, § 2, and Minn. St. 645.023.

to be completed by providing an increase in funding when the cost of completion appeared to be, but was not necessarily, over and above that allowed under Minn. St. 106.201 due to the unusual circumstances of this project. This action cannot be considered arbitrary or capricious, and is a reasonable means to accomplish the objective sought. Chapter 249 is therefore not invalid as violating due process.

■ The benefits determined by the viewers in 1970 totaled $138,919. However, by the time bids were finally received in September of 1975 the total cost including expenses and damages came to $146,554.91, or $7,635.91 in excess of the benefits as originally determined. We have previously held that when a special assessment exceeds the special benefits to the property assessed, there is a taking without just compensation. Quality Homes, Inc. v. Village of New Brighton, 289 Minn. 274, 183 N. W. 2d 555 (1971).

Affidavits submitted to the court below on behalf of the Blue Earth Board of County Commissioners show that land values in Blue Earth County have increased sharply since 1970, and further state that the ditch will result in considerable increases in the value of benefited lands. These facts allow the inference that the benefits from the ditch have also risen, probably in proportion to land values generally, since the 1970 estimate. It might also be inferred that the increase in benefits has kept pace with the increase in costs, so that benefits still exceed costs. This is a factual question and, as such, is open to dispute.[6]

---

[6] An amendment to Minn. St. 1974, § 106.241, L. 1976, c. 126, § 1, supplies the procedure to be followed in future cases where costs have increased due to "unavoidable delay." An interested person may petition the county board or court for a reconsideration of benefits and damages to take into account the effects of inflation on both. This amendment was approved one day prior to the approval of L. 1976, c. 157, which raised the spending limit for the ditch to a sum not to exceed $180,000. Since c. 157, § 1, explicitly states, however, that it is to take effect "[n]otwithstanding the provisions of Minnesota Statutes, Chapter 106," the new procedure would not be applicable to this case unless costs exceed the $180,000 limit.

In enacting c. 249 it must be presumed that the legislature had these facts and others before it. Eldred v. Division of Employment and Security, 209 Minn. 58, 295 N. W. 412 (1940); State v. Donovan, 218 Minn. 606, 16 N. W. 2d 897 (1944); Arens v. Village of Rogers, 240 Minn. 386, 61 N. W. 2d 508 (1953), appeal dismissed, 347 U. S. 949, 74 S. Ct. 680, 98 L. ed. 1096 (1954). It cannot be presumed that the legislature acted capriciously, or without knowledge of facts forming a reasonable basis for its action. Hassler v. Engberg, 233 Minn. 487, 48 N. W. 2d 343 (1951). Plaintiffs have brought forth no evidence to show that, in fact, present costs exceed *present* benefits. In the absence of such a showing, deference to legislative judgment requires the court to assume that the legislature's implicit finding is correct, namely, that benefits still exceed costs as in 1970, and that just compensation is still being given for property taken in the public interest.

■ Plaintiffs argue that "once a ditch is established the landowners have a vested right in the system that cannot be altered," citing Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666 (1924). They further contend that this "vested right" principle "applies also to the benefits and damages as determined in the proceedings and that these cannot be altered by subsequent legislation," citing Garrett v. Skorstad, 143 Minn. 256, 173 N. W. 406 (1919).

These cases clearly do not extend so far. Lupkes decided only that once an assessment has been made and a benefit conferred, the benefit may not be withdrawn without adequate compensation. 157 Minn. 499, 196 N. W. 669. Garrett stands for the principle that once a ditch is established and benefits and damages determined in an appropriate proceeding, the matter is closed to collateral attack as by an injunction to halt the ditch construction. 143 Minn. 259, 173 N. W. 407. Neither case can be extended to bar the legislature from acting to ensure that the promised benefit will in fact materialize when intervening circumstances threaten to prevent it.

Plaintiffs do not make clear what "contract" to which they are a party has been impaired by c. 249. If any analogy to contract can be drawn, it could only be phrased in terms of the state's obligation to provide the ditch in exchange for the benefited landowners' obligation to pay for it. The legislature sought by c. 249 to allow this "contract" to be completed, even though both costs and benefits may have risen since the initial establishment of the ditch. Thus, even if a contract can be imagined, the legislature did not impair obligations under it by passing c. 249. Plaintiffs theory of a "vested right" in the original assessment has no support in the cases, nor do the facts of this case warrant the application of such a theory.

Affirmed.

YETKA, JUSTICE (concurring specially).

I concur in the result, but only because plaintiffs have failed to carry their burden on appeal on a crucial issue.

During the delay that has occurred, it is entirely possible that additional lands not originally benefited by the proposed drainage ditch would now be benefited. However, as the majority opinion points out, plaintiffs have not presented such evidence and, therefore, have not met the burden imposed upon them in challenging the legislation.

Finally, it appears to me that the entire drainage laws now on the books should be looked at by the legislature in the light of the new environmental protection statutes added during recent years, compiled in Minn. St. cc. 116 to 116H. Surely, under the new environmental laws serious doubt as to the desirability of any general drainage schemes must exist.

It appears ludicrous to me that simply to gain a few acres of farm land, swamps and marshes should be drained by one unit of government while another unit of government seeks state funds to acquire and protect wetlands, also to have the same farming areas that are the most active in the drainage schemes seek Federal and state disaster relief due to the effects of drought during dry cycles.

OTIS, JUSTICE (concurring specially).
I concur in the views expressed by Mr. Justice Yetka.

PETERSON, JUSTICE (concurring specially).
I concur in the views expressed by Mr. Justice Yetka.

KELLY, JUSTICE (concurring specially).
I concur in the result.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.