HUDSON, Justice.
This appeal involves an order by respondent Chippewa/Swift Joint Board of Commissioners (Board) reestablishing the records for a public drainage system pursuant to Minn. Stat. § 103E.101, subd. 4a (2018). Appellant Minnesota Department of Natural Resources (DNR) sought certiorari review of the order. The court of appeals dismissed the appeal for lack of jurisdiction. The DNR contends that the Board's order reestablishing public drainage-system records was a quasi-judicial decision subject to certiorari review. The court of appeals held that the order reestablishing records was not a quasi-judicial decision subject to certiorari review because it did not constitute a final, binding decision. We conclude that the Board's order was a quasi-judicial decision subject to certiorari review. Accordingly, we reverse and remand to the court of appeals with instructions to reinstate the appeal.
FACTS
Chippewa and Swift Judicial Ditch No. 9 (the drainage system) is a 17,200-acre watershed in Chippewa and Swift Counties that was established as a public drainage system in 1910. The watershed is mainly comprised of agricultural land cover, with many wetland complexes stretching in the low areas of the watershed along the drainage system. In 2017, landowners benefited by the drainage system requested that repairs be made to the system. While *246 the landowners' request was under consideration, county staff discovered that the original records establishing the drainage system had been lost, destroyed, or were otherwise incomplete. As a result, the Board, acting as the drainage authority for the drainage system, determined that reestablishment of the records was necessary to proceed with a repair.
The reestablishment of drainage-system records is governed by Minn. Stat. § 103E.101, subd. 4a, and requires, "at a minimum, investigation and a report of findings by a professional engineer licensed in Minnesota supported by existing records and evidence." Id. , subd. 4a(a). Accordingly, the Board appointed an engineer to conduct an investigation and prepare a report. The investigation utilized aerial photographs, topographic surveys, soil borings, capacity designs, and culvert dimensions and elevations. The resulting report addressed the ditch alignment, grade, and cross-sections.
The Board submitted the report to the DNR for comment and gave notice of an upcoming hearing, as required by the statute. See id. , subd. 4a(c). The DNR's overarching concern was that the Board's reestablishment proposal would have the effect of lowering the water levels of nearby wetlands.
The DNR made three recommendations to the Board to address this issue. First, the DNR noted that the proposed grade, or slope, of two culverts was significantly lower than existing elevations. The DNR stated that significant lowering of these culverts would substantially reduce the water levels of the wetlands below what was necessary for this system. The DNR requested additional information regarding why the culverts should be lowered. Second, the DNR noted that the report included an increase in grade for a section of the drainage system and argued that the increase appeared unnecessary. Finally, the DNR stated that the proposal for the grade of part of the drainage system would cause a reduction in the runout elevation, which is the point at which the water begins to flow out of a wetland.
The Board next held a public hearing at which the engineer reported his findings and a representative from the DNR again articulated the agency's concerns. Following the hearing, the Board issued an order reestablishing the drainage system's records. In the order, the Board discussed the procedures it followed before reestablishing the records, including appointing an engineer, giving notice to the DNR and others as required by statute, and holding a public hearing. The Board ordered reestablishment of the records for the drainage system to reflect the findings of the engineer's report and ordered that the records "shall constitute the official drainage system records in all subsequent proceedings."
The DNR petitioned the Minnesota Court of Appeals for a writ of certiorari. The Board moved to dismiss the appeal for lack of jurisdiction. The court of appeals held that the Board's order was not a quasi-judicial decision subject to review by certiorari and dismissed the appeal for lack of jurisdiction.
We granted the DNR's petition for review.
ANALYSIS
The issue before us is whether the Board's order reestablishing the drainage-system records was a quasi-judicial decision subject to certiorari review. We have articulated three indicia for determining whether a decision is quasi-judicial: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard;
*247 and (3) a binding decision regarding the disputed claim." Minn. Ctr.for Envtl. Advocacy v. Metro. Council (MCEA) , 587 N.W.2d 838, 842 (Minn. 1999). If all three indicia are present, the action is reviewable by writ of certiorari in the court of appeals. Rochester City Lines, Co. v. City of Rochester , 868 N.W.2d 655, 663 (Minn. 2015).
The DNR and the Board agree that the first two indicia of quasi-judicial decisions are satisfied. Thus, we only examine the third criterion: whether the Board's order was a binding decision regarding the disputed claim and, therefore, reviewable by writ of certiorari on its own; or whether, as the Board argues, the order was a preliminary step in a repair process and only reviewable following a final repair order.
We review issues of jurisdiction de novo. MCEA , 587 N.W.2d at 842. "Certiorari is an 'extraordinary remedy' only available to review judicial or quasi-judicial proceedings and actions; conversely, it is not available to review legislative or administrative actions." Id. (quoting Honn v. City of Coon Rapids , 313 N.W.2d 409, 414 (Minn. 1981) ). In addition, we review matters of statutory construction de novo. Premier Bank v. Becker Dev., LLC , 785 N.W.2d 753, 758 (Minn. 2010). The goal of all statutory construction is to "ascertain and effectuate" the Legislature's intent. Minn. Stat. § 645.16 (2018).
Minnesota has over 20,000 miles of drainage systems, many of which were established in the late 1800s and early 1900s, and many of which were constructed in the State's public-waters system. Minn. Bd. Of Water & Soil Res., Drainage Records Modernization Guidelines 3-4 (2016). Some of these initial drainage records have been lost, destroyed, or are incomplete. In 2013, the Legislature amended the Drainage Code, Minn. Stat. ch. 103E (2018). Act of March 14, 2013, ch. 4, 2013 Minn. Laws 50, 50-55. Relevant here is Minn. Stat. § 103E.101, subd. 4a, which authorizes drainage authorities to reestablish drainage-system records. Drainage-system records "establish[ ] the alignment, cross-section, profile, or right-of-way of a drainage system." Id. , subd. 4a(a). If a drainage authority finds that the records establishing a drainage system have been lost or destroyed, or are otherwise incomplete, the statute allows the drainage authority to reestablish the records by order "as originally constructed or subsequently improved." Id .
Record reestablishment can be initiated either by the drainage authority or by the filing of a petition by any party affected by the drainage system. Id. , subd. 4a(b). The process for record reestablishment must include, "at a minimum, investigation and a report of findings by a professional engineer ... supported by existing records and evidence." Id. , subd. 4a(a).
Following the completion of the engineer's report, the drainage authority must set a hearing, for which it must give notice "to the commissioner of natural resources, the executive director of the Board of Water and Soil Resources, the petitioner or petitioners, and all property owners benefited or damaged by the drainage system." Id. , subd. 4a(c). Finally, the statute states that "[d]rainage system records reestablished under this subdivision constitute official drainage system records," and "[a] finding of drainage system right-of-way in the applicable order is a defense to a trespass claim and shall be given due weight in any subsequent court proceeding to establish the existence or nature of a property encumbrance." Id. , subd. 4a(d).
Notably, the statute does not provide a right to appeal reestablishment orders to the district court, although it expressly does so for several other types of drainage-system *248 orders. See Minn. Stat. § 103E.091 (providing a right to district court appeal for specified orders in drainage system proceedings); Minn. Stat. § 103E.095 (providing a right to district court appeal for orders establishing drainage systems). Without a statutory right to appeal to the district court, the only way to appeal the Board's reestablishment order is by writ of certiorari to the court of appeals, which, in turn, is only permissible if the order was a quasi-judicial decision. See MCEA , 587 N.W.2d at 842.
The DNR argues that reestablishment orders are subject to certiorari review because they are independent decisions with the same finality and effect as establishment orders, which establish drainage systems in the first place. See Minn. Stat. § 103E.341, subd. 2 (describing the order to establish a drainage system). The DNR contends that a reestablishment order is a final decision resulting from a stand-alone drainage procedure, rather than a preliminary step of an improvement[1] or repair[2] proceeding. Like final orders establishing drainage systems, argues the DNR, any inaccuracy in the reestablished records could impact a landowner's property rights. See id .
Conversely, the Board argues that the reestablishment of records is not a stand-alone procedure; rather it is part of the repair procedure, and the Drainage Code provides the right to appeal to the district court later during the repair procedure.[3] The Board contends that a record-reestablishment order is a preliminary order, rather than a final one, because the reestablished records simply create a rebuttable presumption of correctness subject to challenge in future proceedings by producing contrary evidence. The Board compares record-reestablishment orders to preliminary orders in drainage-system establishment proceedings, from which there is no right to appeal. See Minn. Stat. § 103E.261, subds. 5, 7.
The Board's argument that an order reestablishing records is functionally equivalent to a preliminary order in drainage-system establishment proceedings finds some support in the Drainage Code. Both orders are made at a similar point in time: after an engineer's report and a hearing. Minn. Stat. §§ 103E.241 -.261 (preliminary orders); Minn. Stat. § 103E.101, subd. 4a(a) (reestablishment orders). Although record-reestablishment orders are not called "preliminary," the reestablishment of records typically occurs in the context of repairing and improving drainage systems. Thus, the record-reestablishment order is typically subsumed into a final repair order, which goes through several stages of hearing and comment before it is issued. Minn. Stat. §§ 103E.705, .715. But ultimately, we are not persuaded by the Board's argument.
Instead, we conclude that the DNR's position is compelled by the language and framework of the Drainage Code as a whole. As discussed more fully below, the plain language of *249 section 103E.101, subdivision 4a, the parallels between record-reestablishment proceedings and drainage-system establishment proceedings, and the potential effects on the rights of adjacent landowners and other parties, all support a conclusion that record-reestablishment orders are quasi-judicial decisions.
First, the language of section 103E.101, subdivision 4a(d) shows that the record-reestablishment order was a binding decision regarding the disputed claim here, which is whether the drainage-system records were reestablished correctly. The statute states that "[d]rainage system records reestablished under this subdivision constitute official drainage system records." Id. The Board asserts that the reestablishment of records always takes place in the larger context of repair proceedings. Section 103E.101 does not reference repair proceedings. However, even if the Board is correct, the reestablishment order is a binding decision about the dispute at hand, which is whether the reestablished records match the original records. Therefore, the plain language of the statute supports a conclusion that record-reestablishment orders are binding.
Second, although the record-reestablishment process is far less intensive than the process for establishing a drainage system, record reestablishment does have parallels to drainage-system establishment, which is undisputedly a quasi-judicial proceeding (albeit with statutory appeal to the district court). Many of the essential procedures for the establishment of a drainage system are found in the procedures for reestablishing a drainage system's records. These steps include an identified investigatory process;[4] notice to interested parties;[5] an adjudicatory hearing;[6] and a final order.[7]
Our precedent also illustrates that record-reestablishment proceedings closely parallel proceedings to establish drainage systems. For instance, in Slosser v. Great Northern Railway Co. , 218 Minn. 327, 16 N.W.2d 47 (1944), we held that "the engineer's plans and specifications, where confirmed by a valid order 'establishing the ditch, become final and conclusive, unless modified or changed as provided by the statute.' " Id. at 49 (quoting Town of Lisbon v. Yellow Medicine Cty. , 142 Minn. 299, 172 N.W. 125, 126 (1919) ). The engineer's report is also the fundamental component for a record-reestablishment order. Taking this language with the directive that reestablished records are official drainage records, Slosser demonstrates that both establishment orders and the reestablishment of records "fix[ ] in a new status" and "settle[ ]" all property rights involved, "to be again altered only by some authority competent to effect a change and proceeding according to law." Id. (quoting Lupkes v. Town of Clifton , 157 Minn. 493, 196 N.W. 666, 668 (1924) ). Accordingly, the reestablishment order is the drainage authority's final say on the matter of the drainage system records, and it is binding "as against the world." Id. (quoting Lupkes , 196 N.W. at 668 ).
Third, and in the same vein, the reestablishment of drainage-system records may have a significant binding effect on those affected by the drainage system, such as the DNR. The Drainage Code provides that the DNR is entitled to receive notice *250 of all drainage-system improvements. Minn. Stat. § 103E.291. The DNR is only entitled to receive notice of drainage-system repairs, however, if "the repair may affect public waters," Minn. Stat. § 103E.701, subd. 2, or if the DNR is an affected property owner. Minn. Stat. § 103E.715, subd. 3. Permitting requirements are also different for improvements and repairs. Minn. Stat. § 103G.245, subds. 1-2 (2018) ; Minn. R. 6115.0200, subp. 4(C) (2017).
Because a repair is work that restores the drainage system to its original construction and an improvement is work that extends or changes the original construction in some way, the records for the drainage system can influence whether work is categorized as an improvement or a repair. Inaccuracies in reestablished records could result in a drainage project that should be categorized as an improvement mistakenly being treated as a repair. In addition, a drainage authority might not recognize the impact of a drainage project on public waters if there is an error in the reestablished records. Such a situation would affect the DNR's right to notice and ability to challenge the drainage project.
Even outside of the improvement and repair context, record-reestablishment orders can affect significant property rights. The record-reestablishment statute provides that "[a] finding of a drainage system right-of-way in the applicable order is a defense to a trespass claim and shall be given due weight in any subsequent court proceeding to establish the existence or nature of a property encumbrance." Minn. Stat. § 103E.101, subd. 4a(d). Erroneous reestablished records can therefore have substantial legal effects in trespass and property-encumbrance proceedings.
The court of appeals reasoned that reestablished records "are only 'prima facie evidence of the facts stated in the record or order and of the regularity of all proceedings.' " Minn. Dep't of Nat. Res. v. Chippewa/Swift Joint Bd. of Comm'rs , No. A18-0201, Order at 3 (Minn. App. filed Feb. 27, 2018) (quoting Minn. Stat. § 103E.101, subd. 6 ). Section 103E.101, subdivision 6, states in full that
[t]he record of proceedings under this chapter and of orders made by the drainage authority or the district court in the proceedings, or a certified copy of a record or order, is prima facie evidence of the facts stated in the record or order and of the regularity of all proceedings prior to the making of the order.
In other words, records and orders under this chapter can be accepted as evidence in court or other proceedings and are presumed correct. Simply because someone can later challenge that record or order does not mean it is not a final, binding decision. We have long considered orders initially establishing a drainage system to be final and binding even though subdivision 6 says those orders are only prima facie evidence. See Slosser , 16 N.W.2d at 49 ; Lupkes , 196 N.W. at 668.
In sum, the plain language of section 103E.101, subdivision 4a, the similarities between drainage-system establishment and record-reestablishment proceedings, and the substantial effects on the rights of the parties, all confirm that an order by a drainage authority reestablishing drainage-system records is a quasi-judicial decision subject to quasi-judicial review.
CONCLUSION
For the foregoing reasons, we reverse the order of the court of appeals and remand this case to the court of appeals with instructions to reinstate the appeal.
Reversed and remanded.

An improvement includes "the tiling, enlarging, extending, straightening, or deepening of an established and constructed drainage system including construction of ditches to reline or replace tile and construction of tile to replace a ditch." Minn. Stat. § 103E.215, subd. 2.

A repair is a procedure "to restore all or a part of a drainage system as nearly as practicable to the same hydraulic capacity as originally constructed and subsequently improved." Minn. Stat. § 103E.701, subd. 1.

Although both parties agree that the DNR has the right to a statutory appeal following commencement of a repair, we need not address the appealability of repair orders to resolve this appeal.

Compare Minn. Stat. § 103E.101, subd. 4a(a), with Minn. Stat. § 103E.241.

Compare Minn. Stat. § 103E.101, subd. 4a(c), with Minn. Stat. § 103E.261, subd. 1.

Compare Minn. Stat. § 103E.101, subd. 4a(c), with Minn. Stat. § 103E.261, subds. 1-2.

Compare Minn. Stat. § 103E.101, subd. 4a(a), with Minn. Stat. § 103E.261, subd. 5.