THISSEN, Justice.
*793 This case requires us to interpret Minnesota's research and development (R&D) tax credit statute. Minn. Stat. § 290.068 (2010).[1] Specifically, we must answer two questions. First, does the Minnesota Legislature's incorporation of the federal tax code's definition of the term "base amount" in section 290.068 include the federal "minimum base amount" limitation? See Minn. Stat. § 290.068, subd. 1(a)(2) ; I.R.C. § 41(c)(1)-(2) (2012). Second, does the term "aggregate gross receipts" as used in the Internal Revenue Code's formula for calculating the R&D tax credit refer to Minnesota or federal aggregate gross receipts? See I.R.C. § 41(c)(3)(A). The Minnesota Tax Court held that the Legislature incorporated the federal "minimum base amount" limitation into Minnesota's tax credit statute and that for the 2011 tax year, the term "aggregate gross receipts" referred to federal aggregate gross receipts, not Minnesota aggregate gross receipts. We affirm.
FACTS
Relator General Mills is a Delaware corporation with its principal place of business in Minnesota. The company manufactures and markets branded consumer foods sold through retail stores, and supplies branded and unbranded food products to the foodservice and commercial baking industries. General Mills' principal R&D facilities are located in Minnesota.
Before turning to the facts of this appeal, we begin with an explanation of the tax credit provided for R&D expenses. Generally, R&D tax credits are provided to incentivize companies to increase R&D investments in a given tax year. By providing a credit to the taxpayer, Minnesota encourages "the creation of new products, new high-paying jobs, and new businesses" by "attract[ing] and retain[ing] ... high-tech industries" willing to conduct research within the state. See Michael B. Fishman & Karalee Ferreira, A Practical Guide to R&E Credits Offered at the State Level , J. Multistate Tax'n & Incentives, July 1999, at 14, 17 (1999).
Minnesota's R&D tax credit is calculated by subtracting a "base amount" of qualified research expenses (QREs) from the "qualified research expenses for the taxable year." Minn. Stat. § 290.068, subd. 1. If a company has increased its research investments in a given year, then its "qualified research expenses for the taxable year" typically will be greater than its "base amount" QREs and it will be entitled to a tax credit. In 2011-the tax year applicable here-if the difference between the base amount and the taxpayer's taxable year QREs was $2 million or less, the taxpayer was entitled to a credit equal to 10 percent of that difference. Id. To the extent the difference exceeded $2 million, the taxpayer was entitled to a credit equal to 2.5 percent on amounts exceeding $2 million. Id.[2]
*794 Because the credit is based on QREs above a "base amount" of those expenses, the calculation of a taxpayer's base amount is critical. Minnesota's R&D tax credit statute looks to federal law to define this term. See Minn. Stat. § 290.068, subd. 2(c) (relying on IRC § 41(c), in part, to define "base amount"). To calculate the base amount, the taxpayer first calculates its "fixed-base percentage." I.R.C. § 41(c)(1) (setting "fixed-base percentage" as one component of the base amount formula). To calculate its fixed-base percentage, a taxpayer divides its "aggregate qualified research expenses" for the years 1984 through 1988 by the taxpayer's "aggregate gross receipts" for the years 1984 through 1988. See I.R.C. § 41(c)(3)(A). The fixed-base percentage cannot exceed 16 percent. See I.R.C. § 41(c)(3)(C).[3]
Once the fixed-base percentage is calculated, the base amount is calculated by multiplying that percentage by "the average annual gross receipts of the taxpayer for the 4 taxable years preceding the taxable year for which the credit is being determined." I.R.C. § 41(c)(1). The product of this calculation results in a prior-year baseline of QREs in dollar terms against which the actual taxable year QREs are compared. As noted above, the tax credit is calculated as a percentage of the difference between the base amount and the taxable year QREs.
Two observations about this calculation are relevant to the parties' dispute in this case. First, the federal statute setting forth how the "base amount" is calculated also includes a "minimum base amount" limitation. I.R.C. § 41(c)(1)-(2). The "minimum base amount" sets a floor-50 percent of the QREs for the credit year-for the base amount. Accordingly, because the credit is based on the difference between the taxable year QREs and the base amount, the "minimum base amount" floor may have the effect of reducing the amount of the credit, particularly when the amount of QREs grows substantially in a given year.
Second, the larger the amount of "aggregate gross receipts" used as the denominator in the formula for calculating "fixed-base percentage," the larger the tax credit available to the taxpayer. This is so because the larger denominator means the fixed-base percentage (the ratio of QREs to total gross receipts) is lower. The impact of a lower fixed-base percentage is to lower the base amount (expressed in dollar terms). A lower base amount means that the difference between the base amount and the taxable year QREs is larger. And because the tax credit is calculated as a percentage of that difference, a larger difference means a larger tax credit. Stated more simply and practically, typically a taxpayer will prefer a larger amount of "aggregate gross receipts" as the denominator in the formula for calculating fixed-base percentage because it likely results in a larger tax credit.
General Mills claimed the Minnesota R&D tax credit on its timely filed Minnesota corporate franchise tax return for the tax year ending in 2011, claiming $1,112,772 as its credit. Respondent Commissioner of Revenue does not dispute either that General Mills was entitled to that tax credit or the amount of the credit.
In 2015, General Mills filed an amended 2011 Minnesota corporate franchise tax return based on a recalculation of its Minnesota R&D credit.[4] General Mills recalculated *795 its R&D tax credit in two ways. First, General Mills originally used the federal "minimum base amount" when calculating its Minnesota R&D tax credit; its amended return did not. Second, on its initial return, General Mills used Minnesota "aggregate gross receipts" in the formula for calculating the R&D credit. In its amended return, General Mills used federal "aggregate gross receipts" for the R&D credit formula. As a result of these changes, General Mills sought a refund of $949,236 plus interest.
The Commissioner denied General Mills' refund claim and the company appealed to the Minnesota Tax Court. The tax court resolved the appeal on cross-motions for summary judgment. See General Mills, Inc. v. Comm'r of Revenue , No. 9016-R, 2018 WL 4053060 (Minn. T.C. Aug. 17, 2018). The tax court agreed with the Commissioner that the federal "minimum base amount" is incorporated by reference into the Minnesota R&D tax credit statute, and agreed with General Mills that, for the 2011 tax year, "aggregate gross receipts" referred to federal , rather than Minnesota, aggregate gross receipts. General Mills, Inc. , 2018 WL 4053060 at *5, *7-8.
The parties stipulated that if General Mills prevailed on the aggregate-gross-receipts issue (which it did), and not on the minimum-base-amount issue (which it did not), "then [General Mills] is entitled to a total 2011 Minnesota R&D credit of $1,112,772, which is the same amount as the Commissioner previously allowed." Id. at *11 (internal quotation marks omitted). Accordingly, the tax court's decision meant that General Mills was not entitled to a larger tax credit or any refund on its amended 2011 tax return. Id.
General Mills sought our review on the minimum-base-amount question. The Commissioner cross-appealed on the aggregate-gross-receipts question.
ANALYSIS
Because the facts in this case are undisputed and our only task is to interpret a statute, our review is de novo. Manpower, Inc. v. Comm'r of Revenue , 724 N.W.2d 526, 528 (Minn. 2006). The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Dep't of Nat. Res. v. Chippewa/Swift Joint Bd. of Comm'rs , 925 N.W.2d 244, 247 (Minn. 2019) (citing Minn. Stat. § 645.16 (2018) ). When interpreting a statute, we "give effect to the plain meaning of statutory text when it is clear and unambiguous." Hutchinson Tech., Inc. v. Comm'r of Revenue , 698 N.W.2d 1, 8 (Minn. 2005). A statute is ambiguous "only if it is susceptible to more than one reasonable interpretation," in which case "we may resort to the canons of statutory construction to determine its meaning." 500, LLC v. City of Minneapolis , 837 N.W.2d 287, 290 (Minn. 2013).
I.
We first address whether Minnesota has incorporated the federal minimum base amount limitation into the calculation of the R&D tax credit available under Minnesota law.
Minnesota's R&D tax credit is set forth in Minn. Stat. § 290.068, subd. 1 :
A corporation ... [is] allowed a credit against the tax computed under this chapter for the taxable year equal to:
*796 (a) ten percent of the first $2,000,000 of the excess (if any) of
(1) the qualified research expenses for the taxable year, over
(2) the base amount; and
(b) 2.5 percent on all of such expenses over $2,000,000.
Minnesota Statutes § 290.068, subd. 2(c), defines "base amount" as follows: " 'Base amount' means base amount as defined in section 41(c) of the Internal Revenue Code ...."
The federal statute, I.R.C. § 41(c), in turn, contains two relevant provisions discussing "base amount":
(1) In general
The term "base amount" means the product of-
(A) the fixed-base percentage, and
(B) the average annual gross receipts of the taxpayer for the 4 taxable years preceding the taxable year for which the credit is being determined ....
(2) Minimum base amount
In no event shall the base amount be less than 50 percent of the qualified research expenses for the credit year.
I.R.C. § 41(c)(1)-(2).
The parties' dispute focuses on paragraph (2) in the federal statute, and the term "minimum base amount." Specifically, the question is whether both paragraphs (1) and (2) in the federal statute are included in the reference to " section 41(c) of the Internal Revenue Code" in Minn. Stat. § 290.068, subd. 2(c), thereby including the term "minimum base amount," as the Commissioner contends, or whether the Legislature incorporated only paragraph (1) of I.R.C. § 41(c), thereby excluding the federal minimum base amount from the Minnesota calculation, as General Mills contends.
The parties assert that the plain language of Minnesota's R&D tax credit statute supports their respective positions. We conclude, however, that the language of Minn. Stat. § 290.068, subd. 2(c), is ambiguous because both interpretations have a reasonable basis in the statutory text. See Marks v. Comm'r of Revenue , 875 N.W.2d 321, 325 (Minn. 2016) (acknowledging the parties' plain-language arguments, but concluding that the statutory language is ambiguous).
One reasonable interpretation, advanced by General Mills, is that the phrase "as defined in," contained in subdivision 2(c), narrowly refers to only I.R.C. § 41(c)(1), because only paragraph (1) expressly provides what base amount means, i.e., defines the term by stating what it means in terms of a calculation. See I.R.C. § 41(c)(1) (stating that " 'base amount' means the product of" two other components) (emphasis added). This interpretation is reasonable because paragraph (1) in section 41(c) is the only paragraph that expressly states what the term "base amount" means.
The other reasonable interpretation, advanced by the Commissioner, is that both paragraphs (1) and (2) are part of "base amount" for purposes of Minnesota's R&D tax credit. This interpretation makes sense because the Legislature did not limit its incorporation of the federal definition of "base amount" to a specific paragraph; the statute simply says "41(c)." See Minn. Stat. § 290.068, subd. 2(c) ; see also Green Giant Co. v. Comm'r of Revenue , 534 N.W.2d 710, 712 (Minn. 1995) (noting that language incorporating a federal statute "speaks plainly" and the reference to "section 1804 without excluding subdivision (e)(4) " did not allow the court to omit that subdivision in resolving a dispute over the calculation of income (emphasis added)). Moreover, in other parts of section 290.068, the Legislature demonstrated that it knew how to limit the incorporation of federal statutes to particular subdivisions and paragraphs when it so intended. See, e.g. , *797 Minn. Stat. § 290.068, subds. 4 (incorporating I.R.C. § 41(f)(2) ), 5 (incorporating I.R.C. § 41(f)(3) ).
Both interpretations of Minn. Stat. § 290.068, subd. 2(c) are reasonable. The statute's language is therefore ambiguous, so we turn to the legislative history and relevant "canons of construction to discern" which is the "better interpretation" of the statute. State v. Thonesavanh , 904 N.W.2d 432, 436 (Minn. 2017). We conclude that the better interpretation of subdivision 2(c) is that the Legislature intended to incorporate the "minimum base amount" provision set forth in I.R.C. § 41(c)(2).
First, an interpretation of Minn. Stat. § 290.068, subd. 2(c), that incorporates both paragraphs (1) and (2) from I.R.C. § 41(c), makes sense in light of other paragraphs of I.R.C. § 41(c), which are necessary to meaningfully calculate the base amount. For instance, I.R.C. § 41(c)(3), which discusses the determination of a taxpayer's "fixed-base percentage," is necessarily incorporated into Minnesota law because I.R.C. § 41(c)(1) uses the "fixed-base percentage" to calculate the "base amount." Similarly, I.R.C. § 41(c)(6), which requires consistent treatment of qualified research expenses when computing a taxpayer's fixed-base percentage, as well as I.R.C. § 41(c)(7), which sets limits on calculating gross receipts for the taxable year, also pertain to the calculation of the fixed-base percentage, which is a component of "base amount" under I.R.C. § 41(c)(1). Put another way, to limit the Minnesota definition of "base amount" to I.R.C. § 41(c)(1) without reference to other parts of I.R.C. § 41(c) that inform the "base amount" calculation would make the term "base amount" meaningless.
General Mills disagrees, pointing out that in 2011, I.R.C. § 41(c) included other provisions that have nothing to do with calculating "base amount."[5] For instance, I.R.C. § 41(c)(4) addressed the election and calculation of an alternative incremental credit and I.R.C. § 41(c)(5) provided for the election and calculation of an alternative simplified credit. General Mills contends that these provisions, which have nothing to do with the calculation of "base amount," demonstrate that, notwithstanding the words it used in the statute, the Legislature did not intend to incorporate every provision of I.R.C. § 41(c) when calculating the Minnesota R&D tax credit. It further argues that the "minimum base amount" provision in I.R.C. § 41(c)(2) is one of the provisions the Legislature did not intend to include.
The legislative history of Minnesota's R&D tax credit provides a decisive response to this argument. When the Legislature first incorporated the federal concept of "base amount" in 1982-then called "base period research expenses"-what is now I.R.C. § 41(c) was simpler. See Act of Jan. 15, 1982, 3d Spec. Sess., ch. 2, art. 3, § 6, 1981 Minn. Laws 3d Spec. Sess. 16, 87-88 (codified at Minn. Stat. § 290.068, subd. 2(c) (1982) and incorporating I.R.C. § 44F(c) (1982) ). Section 44F of the Internal Revenue Code defined "base period research expenses" as "the average of the qualified research expenses for each year in the base period." I.R.C. § 44F(c)(1) (1982). The "base period" was defined as "the 3 taxable years immediately preceding the taxable year for which the determination is being made." Id. , § 44F(c)(2)(A). The Code also stated in a different subpart that "[i]n no event shall the base period *798 research expenses be less than 50 percent of the qualified research expenses for the determination year." Id. , § 44F(c)(3). In other words, at the time Minnesota first incorporated the federal concept of "base amount" into the state tax credit, that concept had a "minimum" limitation-indeed, the precise 50 percent of QREs limitation that remains to this day-built into its meaning.
In 1991, the Legislature amended section 290.068, incorporating the current version of I.R.C. § 41.[6] See Act of May 31, 1991, ch. 291, art. 7, §§ 11-12, 1991 Minn. Laws 1361, 1500-1501 (codified at Minn. Stat. § 290.068, subds. 1-2 (1992) ). At the time, I.R.C. § 41(c) included only the following: (1) the definition of "base amount," (2) the "minimum base amount" provision, (3) the provision describing how "fixed-base percentage" was calculated, and (4) provisions requiring consistent treatment of expenses and calculation of gross receipts. See I.R.C. § 41(c) (West. Supp. 1991); see Omnibus Budget Reconciliation Act of 1989, Pub. L. No. 101-239, 103 Stat. 2106, 2323 (1989) (codified at 26 U.S.C. § 41(c) (1994) ).
The outlier provisions to which General Mills points were not added until later. Congress added the optional alternative incremental credit in 1996. See Small Business Job Protection Act of 1996, Pub. L. No. 104-188, 110 Stat. 1755, 1774 (1996) (codified at 26 U.S.C. § 41(c)(4) (2000) ). And Congress added the optional alternative simplified credit in 2006. See Tax Relief & Health Care Act of 2006, Pub. L. No. 109-432, 120 Stat. 2922, 2935 (2006) (codified at 26 U.S.C. § 41(c)(5) (2006) ).[7] Therefore, when the Legislature incorporated I.R.C. § 41(c) in 1991 to define "base amount" for Minnesota's tax credit, the federal statute included only provisions (including the "minimum base amount") that defined the scope and parameters of the calculation of "base amount." In light of this legislative history, there is no reason to exclude one such provision of section 41(c) as it existed when the Legislature acted-the "minimum base amount"-while keeping all the rest.
In view of the clarity provided by the legislative history, when reading Minn. Stat. § 290.068, subd. 2(c) and I.R.C. § 41(c) together, we conclude that the Legislature's intent to incorporate I.R.C. § 41(c)(2) into the Minnesota R&D tax credit statute is clear.[8]
*799 In sum, to calculate the Minnesota R&D tax credit, Minnesota Statutes § 290.068, subd. 2(c), incorporates the "minimum base amount" limitation contained within I.R.C. § 41(c)(2).
II.
We now turn to the second issue. Once again, Minn. Stat. § 290.068, subd. 2(c), incorporates the federal definition of "base amount" into Minnesota's R&D tax credit calculation. One element of the "base amount" determination is calculation of the "fixed-base percentage," which is the ratio of "aggregate qualified research expenses" over "aggregate gross receipts." I.R.C. § 41(c)(3)(A). Consequently, to calculate the Minnesota R&D credit, a taxpayer must determine its "aggregate gross receipts." The question we must resolve is whether "aggregate gross receipts" refers to Minnesota, or federal, aggregate gross receipts.
At the federal level, for the 2011 tax year at issue, the Treasury Department defined the term "gross receipts" as "the total amount ... derived by the taxpayer from all its activities and from all sources ...." 26 C.F.R. § 1.41-3(c)(1) (2010). In other words, the federal meaning of the phrase "aggregate gross receipts" is worldwide aggregate gross receipts.
General Mills urges us to use the federal meaning. It makes the straightforward argument that, in Minn. Stat. § 290.068, subd. 2(c), the Legislature adopted the federal definition of "base amount" set forth in I.R.C. § 41(c), which includes the term "aggregate gross receipts." General Mills further notes that the Legislature made three Minnesota-specific modifications to the federal formula. First, the Legislature modified the term "qualified research expenses"-used as the numerator of the fixed-base-percentage fraction, I.R.C. § 41(c)(3) -to exclude "expenses incurred for qualified ... or basic research conducted outside the state of Minnesota ...." Minn. Stat. § 290.068, subd. 2(a). Second, the Legislature limited the term "average annual gross receipts"-the second part of the base amount formula-to Minnesota sales and receipts. Id. , subd. 2(c). Finally, the Legislature restricted the term "qualified research"-a component of QREs-to Minnesota-only research. Id. , subd. 2(b). In contrast to these Minnesota-specific limitations, the Legislature did not alter or limit the phrase "aggregate gross receipts" in the fixed-base-percentage formula's denominator.[9] Accordingly, General Mills contends, the federal meaning of "aggregate gross receipts" applies.
We agree. The plain language of Minn. Stat. § 290.068 incorporates federal law to calculate the Minnesota R&D tax credit, except as otherwise stated in the statute. In addition, the statute's omission of any Minnesota-specific limitation on the term "aggregate gross receipts" as used in federal law means that "aggregate gross receipts" refers to federal aggregate gross *800 receipts. When the Legislature uses limiting or modifying language in one part of a statute, but omits it in another, we regard that omission as intentional and will not add those same words of limitation or modification to parts of the statute where they were not used. See Seagate Tech., LLC v. W. Digital Corp. , 854 N.W.2d 750, 759 (Minn. 2014) (noting that "a condition expressly mentioned in one clause of a subdivision provides evidence that the Legislature did not intend for the condition to apply to other clauses in which the condition is not stated" and that we "cannot add words or meaning to a statute that were intentionally or inadvertently omitted" (citation omitted) (internal quotation marks omitted)); see also Hutchinson Tech., Inc. , 698 N.W.2d at 8 (stating that "we will not add requirements to the statute beyond those specified by the legislature").
Here, the Legislature expressly modified two aspects of the base amount formula to focus on Minnesota, the numerator of the fixed-base-percentage formula and the second half of the base amount formula, but did not modify "aggregate gross receipts," the denominator of the fixed-base-percentage formula. See Minn. Stat. § 290.068, subd. 2(a)-(c). Consequently, Minnesota retained the federal worldwide aggregate gross receipts denominator in the base amount formula for the 2011 tax year.
The Commissioner asserts that using federal "gross receipts" when referring to "aggregate gross receipts," but Minnesota "gross receipts" when referring to "average annual gross receipts," will result in two different meanings for the phrase "gross receipts" in the same mathematical formula. This argument is unpersuasive. The statute in effect in 2011 specifically provided that "average annual gross receipts must be calculated using Minnesota sales or receipts" but placed no such restriction on "aggregate gross receipts." Id. , subd. 2(c). To read the statute as the Commissioner proposes requires us to edit out the words "average annual" from the statutory language. That we cannot do. Laase v. 2007 Chevrolet Tahoe , 776 N.W.2d 431, 438 (Minn. 2009) ("We cannot rewrite a statute under the guise of statutory interpretation.").
The Commissioner's other argument-that Minn. Stat. § 290.068 must necessarily use Minnesota-specific limitations for the policy behind the Minnesota R&D tax credit to make sense-elevates policy considerations over the statute's plain language. We do not, however, add words to the plain language of a statute to fit with an identifiable policy. See, e.g. , BCBSM, Inc. v. Comm'r of Revenue , 663 N.W.2d 531, 534 (Minn. 2003) (noting that the commissioner's "statement of statutory purpose is plausible," but declining to read language into the statute). Nor does the use of federal aggregate gross receipts in the Minnesota R&D tax credit formula result in an absurd outcome. See Schatz v. Interfaith Care Ctr. , 811 N.W.2d 643, 651 (Minn. 2012) (addressing an argument asserting that the plain language of a statute leads to an unfair or unusual result as an absurdity argument); see also State v. Overweg , 922 N.W.2d 179, 184-85 (Minn. 2019) (collecting cases and noting our frequent rejection of the absurdity doctrine even where the interpretation of a statute leads to "anomalous results").
Using federal (worldwide) aggregate gross receipts in the denominator to calculate the fixed-base percentage undoubtedly results in a smaller overall base amount, which in turn increases the size of the Minnesota R&D tax credit available to taxpayers.[10] But that outcome reflects a policy *801 decision, which we leave to the Legislature. See, e.g. , Under the Rainbow Child Care Ctr. v. County of Goodhue , 741 N.W.2d 880, 889 (Minn. 2007) (stating that policy judgments on tax exemptions are for the Legislature to make). The mere fact that the statutorily required method for calculating a refund may result in a larger refund does not require us to add language to the statute, nor does it render the method of calculating that refund absurd.
In sum, we hold that the plain language of Minn. Stat. § 290.068, subd. 2(c), and its incorporation of the term "aggregate gross receipts" through the term "base amount," referred to federal aggregate gross receipts for the 2011 tax year. Consequently, the tax court correctly concluded that federal aggregate gross receipts must be used in the fixed-base-percentage formula contained within the base amount calculation for General Mills' 2011 Minnesota R&D tax credit.
CONCLUSION
For the foregoing reasons, we affirm the decision of the tax court.
Affirmed.

This case involves the 2011 tax year. Therefore, citations to Minnesota Statutes are to 2010-the laws in effect at the time-unless otherwise noted. The 2012 version of the Internal Revenue Code is cited because it did not change after the 2011 tax year.

Minnesota's R&D tax credit differs slightly today. Although it continues to provide a 10-percent credit on the first $2 million in QREs beyond the taxpayer's base amount, it now offers a 4-percent credit on any amount beyond the $2 million threshold. See Minn. Stat. § 290.068, subd. 1(a)-(b) (2018).

The parties do not dispute that this 16-percent maximum applies.

In 2010, the Legislature converted the R&D tax benefit into a refundable tax credit, making it more valuable to taxpayers like General Mills. Act of April 1, 2010, ch. 216, § 10, 2010 Minn. Laws 308, 322-24 (codified as amended at Minn. Stat. § 290.068, subd. 6a (2010) ). A typical tax credit allows a taxpayer to reduce tax liability to zero-but no further-if the amount of the tax credit is equal to or greater than the amount of tax owed. A refundable tax credit allows a taxpayer to reduce tax liability below zero. If the amount of the tax credit is greater than the tax owed, the taxpayer receives a refund for the difference.
In 2013, the Legislature reverted the R&D tax benefit to a nonrefundable credit. Act of May 23, 2013, ch. 143, art. 6, § 15, 2013 Minn. Laws 2445, 2541 (codified as amended at Minn. Stat. § 290.068, subd. 6a (2014) ).

General Mills' argument on this point is somewhat undermined by an internal inconsistency. Although it objects to the inclusion of the "minimum base amount" provision in I.R.C. § 41(c)(2) as part of the definition of "base amount," General Mills has no objection to including I.R.C. § 41(c)(3)(C), which increases the size of its tax credit, as part of the definition of "fixed-base percentage."

In 2017, the Legislature amended Minn. Stat. § 290.068, subd. 2(c), for the first time since 1991. Act of May 30, 2017, ch. 1, art. 13, § 10, 2017 Minn. Laws 1st Spec. Sess. 1017, 1221 (codified at Minn. Stat. § 290.068, subd. 2(c) (2018) ).

We need not decide whether I.R.C. § 41(c)(4)-(5) (2012) are incorporated into Minnesota law through Minn. Stat. § 290.068, subd. 2(c).

General Mills supports its interpretation of Minn. Stat. § 290.068, subd. 2(c), in part by relying on a legislative intent to encourage taxpayers' investment in research expenses in Minnesota by providing the fullest possible credit intended by the legislation. To the extent that this is an argument for construing the statute in favor of the taxpayer, see, e.g. , Charles W. Sexton Co. v. Hatfield , 263 Minn. 187, 116 N.W.2d 574, 580 (1962) (explaining that "where the meaning of a taxing statute is doubtful, the doubt must be resolved in favor of the taxpayer"), that principle is not applicable here. General Mills seeks a tax credit, and it is well-established that provisions creating exceptions to tax-such as exemptions, deductions, and credits-are to be construed narrowly, with the burden on the taxpayer to show that it is entitled to that benefit. See A&H Vending Co. v. Comm'r of Revenue , 608 N.W.2d 544, 547-48 (Minn. 2000) (noting the presumption in favor of taxation and stating that the party seeking an exemption bears the burden of establishing the right to an exemption); TCF Bank Sav. FSB v. Comm'r of Revenue , 486 N.W.2d 756, 757 (Minn. 1992) ("Tax exemptions are to be strictly construed."). Moreover, because the legislative history of Minn. Stat. § 290.068, subd. 2(c), provides such strong interpretive support, we need not resort to these tax-specific interpretative tools. See Busch v. Comm'r of Revenue , 713 N.W.2d 337, 349 n.14 (Minn. 2006) (noting that "strict construction of tax deduction or exemption statutes should not invariably be applied when the reason for invoking the rule is not present"); Sevcik v. Comm'r of Taxation , 257 Minn. 92, 100 N.W.2d 678, 685-86 (1959) (concluding that the rule requiring strict construction of tax exemptions and deductions "must bow to" the rule that "the primary consideration in [ ] statutory construction is the intention of the legislature").

In 2017, the Legislature amended Minn. Stat. § 290.068, subd. 2(c), to limit the phrase "aggregate gross receipts" to Minnesota-only receipts. See Act of May 30, 2017, ch. 1, art. 13, § 10, 2017 Minn. Laws 1st Spec. Sess. 1017, 1221 (codified at Minn. Stat. § 290.068, subd. 2(c) (2018) ). The amendment was not retroactive. Consequently, because this case deals with the 2011 tax year, the amendment is not relevant to our analysis.

Notably, the federal government does not align the geographic scope of "aggregate qualified research expenses" (the numerator in the "fixed-base percentage" fraction) with the geographic scope of "aggregate gross receipts." As noted, "aggregate gross receipts" are worldwide receipts. Treas. Reg. § 1.41-3(c) (2010). At the same time, the Internal Revenue Code exempts from the definition of qualified research any research conducted outside the United States. See I.R.C. § 41(d)(4)(F) (exempting "[a]ny research conducted outside the United States").