STATE OF MINNESOTA

IN SUPREME COURT

A24-0561

Court of Appeals                                                                                                 Gaïtas, J.

Alex Lancaster,

                              Relator,

vs.                                                                                      Filed:  March 12, 2025
                                                                                        Office of Appellate Courts
Department of Human Services,

                              Respondent.

————————————

Jason Steck, Saint Paul, Minnesota, for relator.

Keith Ellison, Attorney General, Saint Paul, Minnesota, and

Mark A. Ostrem, Olmsted County Attorney, Michael T. Walters, Senior Assistant County
Attorney, Rochester, Minnesota, for respondent.

————————————

S Y L L A B U S

A correction order from the Minnesota Department of Human Services is not appealable by writ of certiorari under Minnesota Statutes sections 606.01–.06 (2024) because it is not a judicial decision or a quasi-judicial decision.

Affirmed.

1

GAÏTAS, Justice.

Appellant Alex Lancaster, who operates an adult foster care program in his home, received a correction order from Olmsted County, acting on behalf of the Minnesota Department of Human Services (DHS), after a home inspection.[1] Lancaster appealed the correction order to the Minnesota Court of Appeals by petitioning for a writ of certiorari. The court of appeals determined that the correction order was not appealable and dismissed Lancaster's appeal. We granted Lancaster's petition for review. Because we hold that a DHS correction order is not a judicial decision or a quasi-judicial decision, it cannot be appealed to the court of appeals by writ of certiorari under Minnesota Statutes sections 606.01–.06 (2024). We therefore affirm the court of appeals' dismissal of Lancaster's appeal.

## FACTS

Lancaster provides adult foster care services in his home in Rochester. DHS licenses adult foster care services and may delegate limited authority to counties, including the authority to conduct inspections of program facilities and to issue correction orders. Minn. Stat. §§ 245A.02, subd. 6(f), 245A.16, subd. 1(a), 245A.04, subds. 4–7, 245A.06, subd. 1 (2024). When DHS finds that a licensed provider has violated a licensing law or rule, DHS may issue a correction order. Minn. Stat. § 245A.06, subd. 1. A correction

---

[1] The correction order identified appellant as "Alexander," but appellant's filings in this case have used the name "Alex."

2

order notifies the licensed provider of the alleged violations as well as "the time allowed to correct each violation." *Id.*

A DHS licensor inspected Lancaster's home on January 20, 2024, and identified two alleged violations. On February 7, 2024, Olmsted County issued a correction order, notifying Lancaster of two alleged violations: (1) Lancaster failed to provide resident access to the upstairs living room in violation of Minnesota Rules, part 9555.6205, subpart 2 (2023) ("Each resident must have use of and free access to the living room."); and (2) Lancaster failed to provide resident access to the upstairs eating area in violation of Minnesota Rules, part 9555.6205, subpart 3 (2023) ("Each residence shall have a dining area furnished for group eating that is simultaneously accessible to residents and household members."). This was the second correction order issued to Lancaster concerning these alleged violations.

The correction order required Lancaster to fix the alleged violations. It directed Lancaster to "submit in writing[] documentation of how [the] violations have been corrected and the date the corrections were made" within eight days.

The correction order also informed Lancaster that he could request reconsideration of the correction order. It included instructions for seeking reconsideration and provided a 20-day deadline for such a request. Lancaster did not request reconsideration of the correction order.

On April 8, 2024—more than one month after the 20-day deadline for reconsideration expired—Lancaster filed a petition for a writ of certiorari in the Minnesota Court of Appeals, requesting review of the correction order. Lancaster's petition

3

characterized the correction order as a "quasi-judicial decision." It asserted that the court of appeals had jurisdiction to review the order by writ of certiorari under Minnesota Statutes section 606.01.

The court of appeals ordered the parties to submit memoranda addressing whether it had jurisdiction to review the correction order by writ of certiorari. After receiving the parties' submissions, the court of appeals issued an order dismissing Lancaster's appeal, determining that it had no jurisdiction to review the correction order because the correction order was not a quasi-judicial decision appealable by writ of certiorari. *Lancaster v. Dep't of Hum. Servs.*, No. A24-0561, 2024 WL 1954166, at *2 (Minn. App. Apr. 30, 2024).

Lancaster petitioned for further review of the court of appeals' decision on the question of whether DHS correction orders are appealable by writ of certiorari under Minn. Stat. § 606.01. We granted his petition.[2]

## ANALYSIS

We granted review to consider whether a correction order issued by DHS to a licensed human services provider is appealable by writ of certiorari. This presents a

---

[2]      Before the court of appeals, Lancaster alternatively argued that if that court concluded that correction orders are not appealable, it "should accept the appeal to determine whether Minn. Stat. § 245A.06 is unconstitutional under the Due Process Clauses of the state and federal constitutions." The court of appeals "decline[d] Lancaster's invitation to accept jurisdiction to consider whether Lancaster's inability to immediately appeal the correction order violates due process." 2024 WL 1954166, at *3. Lancaster did not petition for review on that issue, and thus we do not address it here. *See State v. Robinette*, 964 N.W.2d 143, 147 n.6 (Minn. 2021) (" 'we do not address issues that were not raised in a petition for review' " (quoting *In re GlaxoSmithKline PLC*, 699 N.W.2d 749, 757 (Minn. 2005))).

4

question of subject matter jurisdiction. We review issues of subject matter jurisdiction de novo. *Nelson v. Schlener*, 859 N.W.2d 288, 291 (Minn. 2015).

A.

We first identify the scope of certiorari review. A writ of certiorari is a statutory remedy. Minn. Stat. § 606.01. It is "designed to bring up for review the final determination of an inferior tribunal which, if unreversed, would constitute a final adjudication of some legal rights of the relator." *Minn. Dep't of Corr. v. Knutson*, 976 N.W.2d 711, 719 (Minn. 2022) (quoting *Youngstown Mines Corp. v. Prout*, 124 N.W.2d 328, 351 (Minn. 1963)) (internal quotation marks omitted). Because of its targeted purpose, "[c]ertiorari is an 'extraordinary remedy' only available to review judicial or quasi-judicial proceedings and actions," and *not* "administrative actions" more generally. *Minn. Ctr. for Env't Advoc. v. Metro. Council* (*MCEA*), 587 N.W.2d 838, 842 (Minn. 1999) (quoting *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414 (Minn. 1981)); *see also W. Area Bus. & Civic Club v. Duluth Sch. Bd. Indep. Dist. No. 709*, 324 N.W.2d 361, 364 (Minn. 1982) (explaining that "certiorari will lie to review quasi-judicial acts and proceedings of administrative bodies" but not "when the acts sought to be reviewed are of legislative or administrative character").

The correction order, which was issued by Olmsted County acting on behalf of DHS, is not a judicial decision. Accordingly, to be appealable by writ of certiorari, it must be a quasi-judicial decision. *See MCEA*, 587 N.W.2d at 842.

There are three indicia of a quasi-judicial decision, all three of which must exist for certiorari review: "(1) investigation into a disputed claim and weighing of evidentiary

5

facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minn. Dep't of Nat. Res. v. Chippewa/Swift Joint Bd. of Comm'rs*, 925 N.W.2d 244, 246–47 (Minn. 2019) (citation omitted) (internal quotation marks omitted). Quasi-judicial actions include termination of public employees, certain permitting and zoning decisions, and a city's denial of a refund claim. *See, e.g.*, *Dokmo v. Indep. Sch. Dist. No. 11*, 459 N.W.2d 671, 674–78 (Minn. 1990) (involving a challenge to a school board's refusal to reinstate a teacher returning from an extended leave of absence where there was no alternative review process available); *Dietz v. Dodge County*, 487 N.W.2d 237, 238–41 (Minn. 1992) (involving a challenge to a county employee's termination where there was no alternative review process available); *Interstate Power Co., Inc. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 574, 574 n.5 (Minn. 2000) (providing that a county board's "[r]uling on a conditional use permit application is a quasi-judicial act" because "the legislature has not provided for judicial review of zoning decisions of county boards in the district court as it has for zoning decisions" by other governing bodies); *Handicraft Block Ltd. P'ship v. City of Minneapolis*, 611 N.W.2d 16, 20–24 (Minn. 2000) (holding that the proceedings before the city council to select buildings for heritage preservation were quasi-judicial); *Washington County v. City of Oak Park Heights*, 818 N.W.2d 533, 540–42 (Minn. 2012) (holding that a city's denial of a county's claim for refund of alleged overpayments for sewer and water services was a quasi-judicial decision where certiorari was the exclusive method for review available).

We next examine what a DHS correction order is. Then, we turn to the question of whether a DHS correction order meets the three indicia of a quasi-judicial decision.

B.

In considering what a DHS correction order is, we review the statutes that provide for correction orders.

Under Minnesota law, DHS may issue a correction order when it determines that a licensed service provider has violated a licensing statute or rule and the alleged violation "does not imminently endanger the health, safety, or rights of the persons served by the program." Minn. Stat. § 245A.06, subd. 1(a). A correction order does not suspend or revoke a license or otherwise subject a license holder to sanctions. *See id.* Rather, a correction order conveys to the license holder the following information: the conditions that allegedly violate a licensing law or rule, the corresponding law or rule, and the timeframe to correct each violation. *Id.*

A DHS correction order ultimately can lead to licensing sanctions, however. If a license holder fails to timely address a violation alleged in a correction order, DHS "may impose a fine and order other licensing sanctions pursuant to section 245A.07." Minn. Stat. § 245A.06, subd. 3; *see* Minn. Stat. § 245A.07 (2024). Available sanctions include issuance of a conditional license, suspension or revocation of a license, imposition of a fine, or issuance of an injunction against a license holder's operation of the program. Minn. Stat. § 245A.07, subd. 1(a). Fines and license suspensions and revocations imposed pursuant to section 245A.07 are subject to review under the Minnesota Administrative Procedure Act (MAPA). *See* Minn. Stat. § 245A.07, subd. 3(b), (c)(1); Minn. Stat. ch. 14 (2024).

7

If a license holder receives a correction order and "believes that the contents . . . are in error," the license holder can ask DHS—within 20 days of receipt of the correction order—"to reconsider the parts of the correction order that are alleged to be in error" via a "request for reconsideration." Minn. Stat. § 245A.06, subd. 2(a). "A request for reconsideration does not stay any provisions or requirements of the correction order." *Id.* "The commissioner's disposition of a request for reconsideration is final and not subject to appeal under [MAPA]." *Id.* Here, the parties agree that Lancaster did not seek reconsideration of the correction order.

C.

With this background as to how a correction order statutorily operates, we next consider whether a DHS correction order has the three indicia of a quasi-judicial decision. As noted, a quasi-judicial decision includes, first, an investigation into a disputed claim, second, an application of resulting facts to a prescribed standard, and third, a binding decision as to the disputed claim. *Chippewa/Swift Joint Bd. of Comm'rs*, 925 N.W.2d at 246–47. DHS argues that a correction order is not a binding decision regarding a disputed claim, and thus, it is not a quasi-judicial decision. For the reasons explained below, we agree.

A binding decision is one that has a "binding effect on the legal rights of [the] parties." *MCEA*, 587 N.W.2d at 844. To meet this standard, there must be some element of finality such that "the rights of the parties are *irrevocably fixed* by the final decision." *Meath v. Harmful Substance Comp. Bd.*, 550 N.W.2d 275, 275 (Minn. 1996) (emphasis added). Quasi-judicial decisions "affect the rights of a few individuals analogous to the

8

way they are affected by court proceedings." *Reetz v. City of Saint Paul*, 956 N.W.2d 238, 243 (Minn. 2021) (citation omitted) (internal quotation marks omitted).

A DHS correction order does not bind and irrevocably fix the legal rights of a license holder. A correction order notifies a license holder of alleged violations. It advises the license holder of the possibility for sanctions if the license holder fails to address the alleged violations. And it provides the license holder with an opportunity to seek reconsideration.

Lancaster argues that the correction order *does* affect his legal rights because a failure to correct the alleged violations could provide a basis for the DHS commissioner to impose sanctions. *See* Minn. Stat. § 245A.06, subd. 3. The imposition of sanctions is reviewable under MAPA. Minn. Stat. § 245A.07, subds. 3(b), 3(c)(1). But Lancaster argues that, if a correction order itself is not reviewable in an administrative proceeding or by certiorari appeal, a license holder may be barred from challenging a correction order that later results in sanctions. *See* Minn. Stat. § 245A.06, subd. 2(a) ("The commissioner's disposition of a request for reconsideration is final and not subject to appeal under chapter 14.").

We are not persuaded by this argument. First, as noted, a DHS correction order does not *necessarily* lead to sanctions. Sanctions following a correction order are merely a possibility. Lancaster's own history demonstrates this fact. The challenged correction order here was the second correction order that Olmsted County issued to Lancaster for the same alleged violations. The first such order did not result in any sanctions. Because a correction order creates a mere possibility of future sanctions, it does not have a binding

effect on a provider's legal rights such that they are irrevocably fixed. *See MCEA*, 587 N.W.2d at 844; *Meath*, 550 N.W.2d at 275.

Second, although Lancaster does raise a valid concern about a license holder's ability to challenge the allegations in a correction order that ultimately leads to sanctions, the opportunity for such a challenge exists. A license holder who is sanctioned is statutorily entitled to administrative review under MAPA. Minn. Stat. § 245A.07, subds. 3(b), 3(c)(1). At oral argument in this case, counsel for Olmsted County represented that a license holder who received a correction order and was then sanctioned *could* challenge the underlying correction order in the context of a contested case brought under MAPA. Although these are not the circumstances presented here, we agree that, to obtain meaningful review in a challenge to sanctions based on allegations in a correction order, a license holder must be allowed to contest those allegations in the administrative proceeding.[3]

Here, however, Lancaster appealed the correction order itself. The correction order did not bind and irrevocably fix Lancaster's legal rights. It notified him of alleged violations that could—or could not—result in sanctions. Accordingly, we conclude that the correction order was not a quasi-judicial decision.

---

[3]    Our decision should not be interpreted to address the separate issue considered by the court of appeals in *Global Health Link Inc. License No. 1103291*, No. A24-0732, 2024 WL 2768196, Order (Minn. App. May 28, 2024). There, the court of appeals concluded that a *conditional license*, following DHS's denial of reconsideration, was a quasi-judicial decision because it "place[d] significant restrictions on [the] relator, including prohibiting [the] relator from admitting new participants to its program" for a minimum of six months and up to two years. *Id.* at *2. We express no view on the *Global Health Link* decision.

D.

Finally, because the correction order was not a quasi-judicial decision, it was not appealable by writ of certiorari. The court of appeals therefore did not err in dismissing Lancaster's appeal for lack of jurisdiction.[4]

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals dismissal of Lancaster's appeal.

Affirmed.

---

[4] According to Lancaster, DHS issued a conditional license while this appeal was pending. Lancaster asks us to consider the propriety of the conditional license in the interest of judicial economy. However, because the conditional license was issued after Lancaster filed his appeal, and it is not part of the appeal in this matter, we do not consider Lancaster's arguments regarding the conditional license.

11